OPINION
{¶ 1} Plaintiff-appellant Theresa A. Fowler ("appellant") appeals from the March 20, 2003 judgment of the Franklin County Court of Common Pleas, upon a jury verdict rendered in favor of defendant-appellee Carl Coleman ("appellee"). For the following reasons, we affirm.
 {¶ 2} The instant matter stems from an alleged incident that occurred on May 7, 1994, in which appellee, a city of Columbus police officer, allegedly pushed appellant to the ground, causing her to sustain injury to her ankle. The present appeal focuses on: (1) the admissibility at trial of a written summary of an interview between appellant's previous attorney, Timothy Boone, ("Boone") and Michelle Williams, ("Williams") a witness to the alleged incident; and (2) Boone's testimony at trial regarding this summary and his interview with Williams.[1] The written summary provides:
The undersigned, Michelle Williams, on Saturday, May 7, 1994, at approximately 6:30 p.m., was looking out her window from the second floor of her apartment onto the parking area between her apartment building and the building in which Theresa A. Fowler resides. At that time, I saw a police car sitting in the parking area and Theresa Fowler standing near the driver's door. I saw the policeman open his door quickly, and as a result, Theresa Fowler was accidentally pushed to the ground by the officer as he exited his vehicle in the process of trying to apprehend another neighbor. As a result, Theresa fell to the ground and was injured.
Prior to this incident, to the best of my knowledge, there were no potholes or deviations in the parking area which could have caused Theresa Fowler to fall. It appeared from my viewpoint, looking out of the window of the second floor of my apartment, that the cause of Theresa's fall was the police officer accidentally pushing her with the door as he exited his vehicle.
(Plaintiff's Ex. 33).
 {¶ 3} In her deposition, Williams confirmed that Boone interviewed her and took notes regarding her observations of the incident. Williams further testified that the summary provided to her was "not what I had — I had said to him, and that "he had interpreted it differently." (Williams' Depo. at 33.) Williams kept a copy of the summary and offered to send it to defense counsel upon his request.
 {¶ 4} On April 8, 1997, appellee served a subpoena on Boone commanding him to produce and permit inspection of signed statements and witnesses to the incident involving appellant and appellee, including the statement of Williams. On April 30, 1997, appellant filed a motion to quash the subpoena and for a protective order. By decision dated June 17, 1998, and without a hearing, the trial court granted the motion to quash based on insufficiency of service. Nonetheless, the court denied the protective order as to Williams' statement, finding "defendant has shown good cause as to why the statement of Michelle Williams should be discoverable," as her statement to Boone was inconsistent with her deposition testimony.[2]
(June 17, 1998 Decision and Entry at 4.) The court granted the protective order as to all other witness statements.
 {¶ 5} On February 19, 2003, appellant filed a motion in limine to prevent the admission of the summary and to prevent the testimony of Boone. The trial of this case began on February 24, 2003.[3] That same day, after the jury was sworn, the court held a hearing outside the presence of the jury regarding the admissibility of the written summary of Boone's interview with Williams. At the hearing, Boone testified that he met with Williams at his office because she was an alleged witness to the incident. Boone testified appellant was present while he interviewed Williams. He stated he took notes during the interview, then sent a letter to Williams asking her to date, sign and return the written summary he had prepared based on their conversation.
 {¶ 6} Boone could not recall whether the summary contained his choice of words or were provided by Williams, but assumed she agreed with the summary because she did not correct everything. Boone acknowledged the summary "was * * * performed in my role of the attorney for Ms. Fowler, part of my investigation, in order to lock in information from each of the prospective witnesses, and to that extent it was my product that I was creating in that representation." (Tr. at 139.) He further testified that the work product privilege was "not formally waived [by him or appellant] unless her presence during the initial conversation from which this information was received somehow waived it." Id. at 140. Boone testified the document "was only disclosed in this case after the order of His Honor Judge Bessey." Id. at 141.
 {¶ 7} After Boone's testimony, the court found the summary was inadmissible:
The bottom like is this, based on the research that I have done, taking a look at the statement that I have before me right now, I am going to reverse myself. I should not have allowed this discovery to have been effected, which is my responsibility. I hope this does not put Mr. Coleman's representatives at a disadvantage. But what is right is right, and the decision should never have been made that way in the first place. So this statement should not have been susceptible to discovery at that time, and, therefore, I will not allow it to be used on Mr. Coleman's behalf at this time.
In addition, I erred in that I should have had an in camera inspection of the statement before I issued the decision, which I did not do, and that is not the responsibility of Mr. Coleman's attorney.
Id. at 160.
 {¶ 8} Thereafter, the court allowed the parties to make additional arguments regarding the admissibility of the summary. Despite its decision that Williams' "statement" was inadmissible, the court decided to admit the summary prepared by Boone as a prior inconsistent statement of Williams for purposes of impeachment:
Based upon the portion of the [deposition] transcript that was read to me, it would appear that the person who made the statement, Michele Williams, evidenced a willingness for the statement to be disclosed, her statement, and she does have control, a degree of control over who that statement is given to.
She evidenced no objections to providing or indicated a willingness to provide the statement to opposing counsel. The statement was dealt with in the deposition to a sufficient degree that I am now going to go back to where I was before and hold that the statement may be admissible for purposes of impeaching the witness by virtue of prior inconsistent statements, that may, that could be included in what has been designated as Plaintiff's Exhibit A, and that will depend on the testimony of Ms. Williams today.
Id. at 170.
 {¶ 9} Williams testified at trial on behalf of appellant. During direct examination, Williams testified that she witnessed appellee physically push appellant. Id. at 178, 185. Williams testified that in 1995, she spoke with Boone by telephone regarding her observations of the incident and that she never met with him in person. Williams testified that her statements to Boone were consistent with her trial testimony, and that the summary he prepared of their interview was "far from being accurate." Id. at 192.
 {¶ 10} During cross-examination, Williams reiterated her testimony she offered during direct examination that she witnessed appellee physically push appellant. Over objection of counsel, Williams was further questioned regarding the summary of her interview with Boone. She stated that the summary prepared by Boone of their interview was imprecise, and that she contacted Boone regarding the inaccuracies contained in the summary. Id. at 198. Although she felt "the whole statement was incorrect," Williams testified she made handwritten corrections to the summary, signed it on May 1, 1995, and returned it to Boone. Id. at 215-216. The modified summary read in relevant part:
I saw the policeman open his door quickly, and as a result, Theresa Fowler was accidentally physically with both hands, pushed to the ground by the officer; * * *
In the process of trying to apprehend another neighbor * * *.
* * *
It appeared from my viewpoint, looking out of the window of the second floor of my apartment, that the cause of Theresa's fall was the police officer accidentally pushed her.
Id. at 217-221.
 {¶ 11} Williams testified at trial that she never indicated to Boone that appellee pushed appellant "accidentally." Id. at 226.
 {¶ 12} During Boone's testimony, he was asked by appellee's counsel whether or not he had occasion to take a witness statement from Williams. Appellant's counsel objected, invoking the attorney-client privilege and the work product privilege with regard to any issues surrounding the statement. At a subsequent sidebar conference, the court ruled that the subject matter of Boone's testimony was "confined to work product, not attorney-client privilege" and that "several exceptions to the prohibition against disclosure" apply to allow production of Williams' statement and Boone's testimony regarding the same. Id. at 17. Appellant's counsel sought clarification regarding the court's ruling that good cause had been shown for production of Williams' statement. In response, the court stated "I think it's when the genie's out of the bottle, it's out. And [the summary] was used during discovery. It was used during the deposition of Ms. Williams. And the court feels that it's relevant." Id. at 20. The court further stated "I know from what I heard that portion of the deposition that was read to the court, that document was present, shown to the witness when she was being deposed and was put into use." Id. at 21.
 {¶ 13} Boone testified that he met with Williams in person to discuss the incident between appellant and appellee. During the interview, Williams told him she saw appellee exit his cruiser, and in the process his door accidentally "bumped into or was pushed into Ms. Fowler and as a result, Ms. Fowler fell to the ground." Id. at 29. Boone testified that Williams never told him appellee or any other officer pushed or hit appellant. Id. at 30. Further, Boone testified that he never told Williams she should sign and date the summary if she felt it was inaccurate.
 {¶ 14} At the conclusion of trial, the jury rendered judgment in favor of appellee. On March 20, 2003, a judgment entry was filed entering judgment in favor of appellee and dismissing the action on the merits, pursuant to the jury's verdict.
 {¶ 15} On April 1, 2003, appellant filed a motion for a new trial pursuant to Civ.R. 59(A)(1). Therein, she argued Williams' statement prepared by Boone, Boone's testimony at trial regarding Williams and her statement prepared by Boone, and the improper use of the statement in the cross-examination of witnesses. By decision dated February 4, 2004, the court entered its decision denying appellant's motion for a new trial. Therein, the court found that its decision to "allow the release of Michelle William's [sic] statement, or the later admission of such statement, or the subsequent testimony of Timothy Boone regarding the statement, was not an abuse of discretion by the court, or prevented Plaintiff from receiving a fair trial." (February 4, 2004 Decision at 2.)
 {¶ 16} On appeal, appellant asserts the following assignments of error:
I. The trial court erred by admitting the witness "statement" prepared by attorney timothy boone.
II. The trial court erred in ordering attorney boone to testify over ms. fowler's assertion of attorney-client privilege.
III. The trial court erred in denying ms. fowler's motion to quash the subpoena ordering attorney boone to produce the statement he prepared.
IV. The trial court erred in overruling plaintiff's motion in limine.
 {¶ 17} Appellant's first and second assignments of error are interrelated and will be addressed together. In her first assignment of error, appellant argues the trial court erred by admitting the summary of Williams' observations prepared by Boone. Appellant alleges that Williams never adopted the summary prepared by Boone. Appellant emphasizes that Williams indicated in her deposition and at trial that the summary was not an accurate reflection of what she had stated in the interview, and that she only signed the summary at the request of Boone. Finally, appellant asserts that the summary was never acknowledged in front of a notary public. Because the summary was Boone's characterization of Williams' oral statements regarding the incident, appellant asserts that the summary is not Williams' "statement," and the court improperly admitted the same.
 {¶ 18} Appellee argues contra that the summary is a prior inconsistent statement of Williams. Appellee emphasizes that both Boone and Williams were permitted to testify with respect to the summary, and that whether or not the summary was accurate was an issue of fact for the jury to determine.
 {¶ 19} Evid.R. 613 provides for the impeachment of a witness with a prior inconsistent statement and allows extrinsic evidence of a prior inconsistent statement to be offered into evidence after a proper foundation is established. Evid.R. 613(B); State v. Theuring (1988),46 Ohio App.3d 152, 155, 546 N.E.2d 436. Evid. R. 613(B) requires that a witness be afforded an opportunity to explain or deny a prior inconsistent statement before extrinsic evidence of that statement is admissible. "If a witness denies making the statement, a proper foundation has been laid, and the evidence does not relate to a collateral matter, extrinsic evidence is admissible." State v. Riggins
(1986), 35 Ohio App. 3d 1, 519 N.E.2d 397, paragraph two of the syllabus; Evid. R. 613(B).
 {¶ 20} A summary of a witness's oral conversation becomes a witness's statement only if he has reviewed and signed, or otherwise adopted it, or if it is a nearly verbatim account as opposed to being merely the investigator's own selections, interpretations, or interpolations. Statev. Linder, Franklin App. No. 01AP-962, 2002-Ohio-5077, at ¶ 9 (Citations omitted.) Although the term "statement" is not defined in Evid.R. 613, we find it appropriate to apply the definition found in Civ.R. 26(B)(3) of "statement," which provides:
[A] statement of a party includes (a) a written statement signed or otherwise adopted or approved by the party, or (b) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement which was made by the party and contemporaneously recorded.
See, also, Linder at ¶ 9; Breech v. Turner, 127 Ohio App.3d 243,248, 712 N.E.2d 776, fn.3; Perry v. Dobbins (Apr. 4, 1990), Jackson App. No. 589, 1990 Ohio App. LEXIS 1400 at *7.
 {¶ 21} Moreover, a trial court has broad discretion in the admission of evidence, and we will not disturb the trial court's decision unless the court has abused its discretion. State v. Sieng, Franklin App. No. 04AP-556, 2005-Ohio-1003 at ¶ 22 citing State v. Issa (2001),93 Ohio St.3d 49, 64, 752 N.E.2d 904. See, also, State v. Chapman (Dec. 31, 2001), Franklin App. No. 01AP-650.
 {¶ 22} Here, Boone testified that the written summary was prepared from his notes of his interview with Williams and reflected her thoughts during the interview. (Tr. at 24.) Further, Williams testified she read the summary, made corrections and signed it before returning it to Boone. Although Williams testified she only signed the summary at the request of Boone, we conclude that Williams adopted the "statement" as her own, and that appellee demonstrated that the summary was more than Boone's characterization of appellant's prior oral statements.
 {¶ 23} Furthermore, appellant cites no authority for her assertion that Williams' prior statement should have been notarized as being true and accurate. By its definition, Civ.R. 23(B)(3)(a) does not require a statement to be acknowledged in front of a notary public. Further, the summary was received into evidence for the limited purpose of impeaching Williams' testimony and not as substantive evidence. Id. at 170. Thus, appellant's claim that the statement should have been acknowledged in front of a notary public is without merit.
 {¶ 24} During cross-examination, Williams reiterated the testimony she offered during direct examination that she witnessed appellee physically push appellant. She further indicated that the summary prepared by Boone was an inaccurate characterization of her observations of the incident. Thus, appellee's counsel laid a proper foundation for admitting this evidence for impeachment purposes as required by Evid.R. 613(B). Accordingly, we find the summary prepared by Boone of his interview with Williams was a prior inconsistent statement of Williams, and properly admitted into evidence for impeachment purposes. Evid.R. 613(B).
 {¶ 25} Appellant further argues in support of her first assignment of error that even if the summary was Williams' "statement," it is subject to work product privilege. Appellant argues that appellee did not demonstrate good cause as to why the statement of Williams should be discoverable. Appellant emphasizes that Williams was available for deposition and that his defense did not rest solely on the admissibility of this statement. Thus, appellant asserts that appellee would not have been prevented from having a fair trial had the statement not been admitted into evidence.[4]
 {¶ 26} Appellee argues contra that he has demonstrated a substantial need for Williams' statement because it is inconsistent with her trial testimony. Appellee emphasizes that "a prior inconsistent statement of a purported eyewitness, who in May, 1995, told an investigating attorney that Ms. Fowler was `accidentally' pushed to the ground, was critical to defendant's case." (Appellee's Brief at 7.)
 {¶ 27} Civ.R. 26(B)(3), the work product doctrine, states work product consists of "documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" and may be discovered only upon a showing of good cause. Civ.R. 26(B)(3); Boone v. Vanliner Ins. Co. (2001),91 Ohio St.3d 209, 210, 744 N.E.2d 154. The purpose of the work product doctrine is "to prevent an attorney from taking undue advantage of his adversary's industry or efforts." Civ.R. 26(A)(2).
 {¶ 28} Ordinary fact or "unprivileged fact" work product, such as witness statements and underlying facts, receives lesser protection. Inre Antitrust Grand Jury (C.A.6, 1986), 805 F.2d 155, 163. Written or oral information transmitted to the attorney and recorded as conveyed may be compelled upon a showing of "good cause" by the subpoenaing party. Civ.R. 26(B)(3). "Good cause," as set forth in Civ.R. 26(B)(3), requires a showing of substantial need, that the information is important in the preparation of the party's case, and that there is an inability or difficulty in obtaining the information without undue hardship. UpjohnCo. v. United States, 449 U.S. 383, 400, 101 S.Ct. 677, 66 L.Ed.2d 584.
 {¶ 29} In support of its position, appellee cites Perry, supra, in which the Fourth Appellant District considered when a certain set of circumstances constitutes good cause in relation to the work product doctrine. The court cited to 5 Anderson's Ohio Civil Practice 10-11, § 159.09, which reads, "the statement of a witness cannot ordinarily be discovered where the witness is equally available to the party seeking discovery. Exceptions to this principle are recognized where * * * there are indications that the prior statement is inconsistent with the version given the party seeking discovery." 1990 Ohio App. LEXIS 1400 at *7.
 {¶ 30} We agree with appellee's position and reliance on the authority cited in Perry. Here, we find Williams' statement was work product, as Boone prepared Williams' statement in preparation for trial. Further, we have previously determined that Williams' statement is inconsistent with her trial testimony. Thus, appellee has shown a substantial need to have the jury consider both versions of her account of the events that occurred between appellant and appellee in order to assess her credibility. Accordingly, we find the court did not abuse its discretion through its admission of this statement into evidence as an exception under the work product doctrine.
 {¶ 31} In her second assignment of error, appellant claims that the court erred in ordering Boone to testify over her assertion of attorney-client privilege. Appellant asserts she never waived the attorney-client privilege with regard to Boone's representation of her in the instant matter. Appellant alleges that Boone's interview with Williams was in furtherance of her lawsuit, and his trial testimony "undermined" appellant's case. (Appellant's Reply Brief at 8.)
 {¶ 32} "`The attorney-client privilege exempts from the discovery process certain communications between attorneys and their clients. The privilege has long been recognized by the courts * * *.'" Shaffer v.OhioHealth Corp., Franklin App. No. 03AP-102, 2004-Ohio-63 at ¶ 7 quoting Boone, supra, at 210, fn.2. "`Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" Id., quoting Upjohn Co. v. United States
(1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L. Ed.2d 584.
 {¶ 33} The burden of showing the information sought to be excluded rests with the party asserting the existence of privilege. Shaffer at ¶ 8; Waldmann v. Waldmann (1976), 48 Ohio St.2d 176, 178, 358 N.E.2d 521;Lemley v. Kaiser (1983), 6 Ohio St.3d 258, 6 OBR 324, 452 N.E.2d 1304.
 {¶ 34} R.C. 2317.02 statutorily governs the attorney-client privilege, which provides in relevant part:
The following persons shall not testify in certain respects:
(A) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client and except that, if the client voluntarily testifies or is deemed by section 2151.421
[2151.42.1] of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject;
 {¶ 35} R.C. 2317.021 defines "client" as used in R.C. 2317.02(A):
"Client" means a person, firm, partnership, corporation, or other association that, directly or through any representative, consults an attorney for the purpose of retaining the attorney or securing legal service or advice from him in his professional capacity, or consults an attorney employee for legal service or advice, and who communicates, either directly or through an agent, employee, or other representative, with such attorney; and includes an incompetent whose guardian so consults the attorney in behalf of the incompetent.
 {¶ 36} In support of his position, appellee asserts that Boone did not testify regarding any attorney-client communication between him and his client, appellant. Thus, appellee asserts that the instant matter did not violate the attorney-client privilege. We agree.
 {¶ 37} Boone testified exclusively regarding his communication with Williams, a non-party witness to the incident, and the substance of the statement he prepared based on their interview. Thus, Boone's testimony did not concern a communication made to him by his client, i.e., appellant. Accordingly, we find Williams' statement to Boone and his testimony regarding the same are not protected by the attorney-client privilege.[5] For the foregoing reasons, appellant's first and second assignments of error are overruled. Based on our finding that the court properly admitted Williams' statement into evidence, appellant's third and fourth assignments of error are rendered moot.
 {¶ 38} Accordingly, appellant's first and second assignments of error are overruled, appellant's third and fourth assignments of error are rendered moot, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Brown, P.J., and Petree, J., concur.
[1] Appellant appealed this matter on two prior occasions involving issues unrelated to the instant appeal. See Fowler v. Coleman (Mar. 10, 1998), Franklin App. No. 97AP-1156 and Fowler v. Coleman (Dec. 28, 1999), Franklin App. No. 99AP-319.
[2] Appellant did not address the trial court's decision to deny the protective order with regard to Williams' statement after granting the motion to quash the subpoena to produce this statement.
[3] The record contains a partial transcript of the trial in the instant matter.
[4] Appellant further claims the court erred by not holding an in camera hearing to determine the evidentiary nature of the statement. However, based on our finding that the statement was properly admitted for impeachment purposes, we need not address this issue.
[5] Appellant also claims she did not waive the work product privilege as to Williams' statement, or the attorney client privilege as to Boone's representation of her in this case. Based on our finding that the documents were properly admitted as an exception to the work product privilege, and the statement at issue is not protected by attorney-client privilege, we need not address this issue.