Day, J.
 

 The controlling questions in this case are whether the books, records and documents are rele
 
 *190
 
 vant and material and whether the casualty report constitutes a privileged communication.
 

 Directing, first, our attention to the question of privileged communications; the law exacts disclosure of the truth in all proceedings except to the extent that non-disclosure is protected by constitutional provision or statutory enactment.
 

 The philosophy behind exemption from disclosure of privileged communications is well stated in
 
 Anderson
 
 v.
 
 Bank of British Columbia,
 
 (1876) Chancery, L. R. 2 Ch. D., 644, 649. The court, speaking through Jessel, M. R., said:
 

 “The object and meaning of the rule is this: That as, by reason of the complexity and difficulty of our law, litigation can only be properly conducted by professional men, it is absolutely necessary that a man, in order to prosecute his rights or to defend himself from an improper claim, should have recourse to the assistance of professional lawyers, and it being so absolutely necessary, it is equally necessary, to use a vulgar phrase, that he should be able to make a clean breast of it to the gentleman whom he consults with a view to the prosecution of his claim, or the substantiating of his defense against the claim of others; that he should be able to place unrestricted and unbounded confidence in the professional agent, and that the communications he so makes to him should be kept secret, unless with his consent (for it is his privilege, and not the privilege of the confidential agent), that he should be enabled properly to conduct his litigation. That is the meaning of the rule.”
 

 Professor Wigmore, in 5 Wigmore on Evidence (2d Ed.), 14, Section 2291, says: “The policy of the privilege has been plainly grounded, since the latter part of the 1700s, on subjective considerations. In order to promote freedom "tof consultation of legal advisers by clients, the apprehension of compelled disclosure by the legal advisers must be removed;
 
 *191
 
 and hence the law must prohibit snch disclosure except on the client’s consent. Snch is the modern theory. ’ ’
 

 Privileged communication statutes generally protect a client against disclosure of facts revealed in “non-litigious” as well as in “litigious” consultation, so long as the consultation is concerning legal rights and obligations.
 

 Privileged communications between attorney and client are, in Ohio, protected by Section 11494, General Code, the pertinent portion of which reads as follows:
 

 “The following persons shall not testify in certain respects:
 

 “1. An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; or a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient. But the attorney or physician may testify by express consent of the client or patient; and if the client or patient voluntarily testifies,'the attorney or physician may be compelled to testify on the same subject; * *
 

 The administratrix seeks production of documentary evidence consisting of books, records and documents of The Avondale Motor Oar Company, dealing with payrolls and payroll schedules, and of a casualty report which was made out by Joseph Scharff and sent by The Avondale Motor Car Company to The A. W. Witham Insurance Agency of Cincinnati, local representative of The Lumbermen’s Mutual Casualty Company. It appears that The Witham Insurance Agency forwarded the original report to The Lumbermen’s Mutual Casualty Company and sent a copy thereof to Richard Remke, as the latter’s attorney, who likewise represents The Avondale Motor Car Company in defense of the suit filed against it by-
 
 *192
 
 the administratrix. This report is claimed to constitute a privileged communication.
 

 In order for a document to constitute a privileged communication it is essential that it be brought into being primarily as a communication to the attorney.
 

 Professor Wigmore says: “* * * A document of the client
 
 existing before it was communicated
 
 to the attorney is not within the pres'ent privilege so as to be exempt from production. But a
 
 document
 
 which has
 
 come into existence as a communication
 
 to the attorney, being itself a communication, is within the present privilege. Documents of the latter sort are therefore
 
 exempt from production
 
 under a bill of discovery; while documents of the former sort are not exempt from production under a bill of discovery or the modern statutory motion to produce, although at common law the party as such would not have been compellable to produce. That is to say, at common law, he was protected in the first instance as party and in the second instance as client; while in chancery and under statutes he has ceased to be protected as party but is still protected as client. Only those documents, therefore, which he has created as a communicating client are now privileged.” 5 Wigmore on Evidence (2d Ed.), 67, Section 2318.
 

 The casualty report was brought into being as a communication, not in the ordinary course of The Avondale Motor Car Company’s business.
 

 The record discloses that the report was not sent by The Avondale Motor Car Company to its attorney, but by The A. W. Witham Insurance Ageney to the attorney for The Lumbermen’s Mutual Casualty Company. In forwarding the report in this manner, The Avondale Motor Car Company did so in compliance with the terms of its contract of insurance, which provides that: “F. Upon the occurrence of an accident covered by this policy the assured shall give immediate written notice thereof with the fullest in
 
 *193
 
 formation obtainable at tbe time to tbe Home Office of the company. * *
 
 *
 
 Notice given by or on behalf of the assured to any authorized agent of this company with particulars sufficient to identify the assured shall be deemed notice to the company. * * * If any claim is made on account of such accident, the assured shall give like notice thereof with full particulars. If thereafter suit is brought against the assured to enforce such claim, the assured shall immediately forward to the company every summons or other process served upon the assured.”
 

 Now, what is the status of the casualty report with respect to The Lumbermen’s Mutual Casualty Company? Does the fact that it was transmitted by the insurance company, through its agent, to its counsel, make it a privileged communication from client to attorney?
 

 The report thus required, when furnished, becomes the property of the insurance company, and when the original or copy thereof is transmitted by the insurance company, either directly or through an agent, to its attorney, on the authority of
 
 Ex parte Schoepf,
 
 74 Ohio St., 1, 77 N. E., 276, 6 L. R. A. (N. S.), 325, it constitutes a communication from client to attorney, and as such it is protected as a privileged communication under Section 11494, General Code, and its production and disclosure cannot be compelled by subpoena
 
 duces tecum.
 

 The record reveals that Gordon G. Bennett, secretary of The Witham Insurance Agency, on behalf of The Lumbermen’s Mutual Casualty Company, claimed the report to be a privileged communication and refused to produce it on that ground. Under the facts present in this case, we hold this report to be a privileged communication as between The Lumbermen’s Mutual Casualty Company and its attorney. In view whereof, Gordon G. Bennett cannot be held to be in contempt for refusing to produce this report.
 

 
 *194
 
 Inasmuch as the report is the property of the insurer, under its complete control and privileged, and inasmuch as the privilege has not been waived but asserted, production of the report by-George L. Ten Eyck, the vice-president and general manager of The Avondale Motor Car Company, is not rendered possible. Consequently, George L. Ten Eyck cannot be held as for contempt for failure to produce the report.
 

 Where an insurer receives a report from its insured concerning a casualty covered by its policy of insurance, such report becomes the property of the insurer and subject to its complete control; and, when the insurer transmits it to its counsel for the purpose of preparing a defense against a possible law suit growing out of such casualty, such report constitutes a communication from client to attorney and is privileged against production and disclosure under Section 11494, General Code.
 

 We now proceed to the consideration of the question whether the books, records and accident report are relevant and material to the issues in the case. In view of what we have said, it is unnecessary to discuss the relevancy and materiality of the casualty report. The bookkeeper testified that he had some of the books and records which were subpoenaed, but refused to produce them on advice of counsel who contended that they were incompetent, irrelevant and immaterial to the issues in the case. The administratrix, in her petition sets up the relationship of principal and agent as having existed between The Avon-dale Motor Car Company and Joseph Scharff on the day and at the time the decedent was injured. The answer of The Avondale Motor Car Company denies such relationship. The issue of agency is thus clearly raised. Proof of agency is the necessary link in the chain of evidence connecting The Avondale Motor Car Company with the casualty, and it is for the purpose of finding this necessary link that production of the
 
 *195
 
 books and records is sought. Entries therein are competent as admissions against interest and are both material and relevant to the question of agency. Refusal to produce these books and records was unlawful.
 

 "Where it is alleged in a wrongful death action that the person causing the casualty is an employee or agent of defendant, and proof of agency is the necessary link in the chain of evidence connecting defendant with the casualty, defendant’s books, records and documents, having a bearing on the question of agency, aré relevant, material and competent as evidence in the case.
 

 It is the opinion of this court that Gordon G. Bennett, secretary of The A. W. "Witham Insurance Agency, and George L. Ten Eyck, vice-president and general manager of The Avondale Motor Car Company, be purged of contempt, and it is so ordered. We are further of the opinion that Theodore A. Klemann, bookkeeper of The Avondale Motor Car Company, is guilty of contempt for unlawfully refusing to produce the books and records subpoenaed, and his commitment is therefore affirmed.
 

 Judgment affirmed as to Theodore A. Klemann. Judgments reversed as to George L. Ten Eyck and Gordon G. Bennett.
 

 Weygandt, C. J., Stephenson, Jones, Matthias and Zimmerman, JJ., concur.
 

 Williams, J., concurs in paragraph 2 of the syllabus and in the judgments'.