BREECH, Appellant,

v.

TURNER, Appellee.

[Cite as *Breech v. Turner* (1998), 127 Ohio App.3d 243.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 97CA2517.

Decided April 14, 1998.

*Margaret Apel Miller,* for appellant.

*Daniel P. Ruggiero,* for appellee.

---

HARSHA, Judge.

Virgil Breech appeals a judgment of the Scioto County Court of Common Pleas entered upon a jury verdict in favor of Jack Turner. Appellant has also appealed the trial court's denial of his motion for a new trial.

Appellant assigns the following three errors for our review:

"I. The trial court committed reversible error in overruling appellant's motion to compel certain documents from the insurance adjusters' file, inasmuch as said information tended to impeach the testimony of appellee.

"II. The trial court committed reversible error in (A) excluding the testimony of James Cookson and Melanie Smith, independent insurance adjusters for appellee's liability insurance company, (B) excluding from evidence a document entitled 'Activity Log' obtained by appellant during the course of discovery from appellee's insurance adjuster, (C) excluding from evidence all evidence of prior inconsistent statements made by appellee, and (D) excluding all evidence of liability insurance, inasmuch as said testimony and evidence was relevant to the issue of ownership and as a basis to impeach appellee.

"III. The trial court committed reversible error in overruling appellant's motion for a new trial."

According to appellant, on March 6, 1994, he was driving a brown Ford Thunderbird on State Route 104 in Scioto County, Ohio when he encountered a black and white cow standing on the highway. Appellant swerved into the other lane in order to miss the cow, but an oncoming truck forced him back into his own lane where he immediately encountered a different cow, this one being red and white, also on the highway. Due to the oncoming truck, appellant was unable to maneuver around this second cow and he "sideswiped" it.

Appellant immediately pulled to the side of the road in order to determine whose cow he had struck. The person at the first house he approached stated that his only cow was secured in the barn. Appellant then thought the cows might have belonged to appellee, so he proceeded to appellee's house a short distance away. Appellant testified that after telling appellee that he might have struck one of his cows, they walked back to appellee's barn. According to appellant, there was a black and white and a red and white cow standing in front of the barn's gate. After allegedly telling appellant, "My kids must have left the gate open," appellee opened the gate and the two cows walked into the barnyard.

On the other hand, appellee's recollection about that night's events differed substantially from appellant's testimony. First, appellee testified that appellant was driving a white car, possibly a Chevrolet Cavalier, and not a brown Thunderbird. Second, appellee stated that when the two of them walked back to his barn, there were no cows standing outside of the fence. And, finally, appellee denied telling appellant that anyone had left the gate open.

Appellant filed a complaint alleging that he suffered permanent personal injuries as a proximate result of appellee's negligence in permitting his cows to run on the highway. Appellee denied that any of his cows were on the highway or at large on the night in question. When this matter proceeded to trial, the

jury returned a defense verdict. Appellant filed a motion for a new trial, which appellee opposed. When the trial court denied his motion, appellant filed a timely notice of appeal from both the jury verdict and the denial of his motion.

I

Appellant contends in his first assignment of error that the trial court improperly denied his motion to compel discovery. The record reflects that Grange Mutual Casualty Company, appellee's liability insurer, contracted with GAB Business Services, Inc. ("GAB") to conduct an investigation into the incident. James Cookson, an adjuster with GAB, telephoned appellee as part of his investigation. Following his conversation with appellee, Cookson made the following entry in the activity log of GAB's claims file: "C/insd discussed did see calf but questions damages."[1] Appellant also learned that approximately twelve days after Cookson spoke with appellee on the telephone, Cookson sent a report to Grange that stated, "Your insured's cow got loose * * *." Appellant's counsel got to see this report only briefly and was not provided with a copy of it.

Appellant later filed a motion to compel discovery, in which he moved the trial court "to order Ms. [Melanie] Smith to produce any documents which may reflect communications of any sort with Mr. Turner, specifically any report in which Mr. Cookson or anyone else renders Mr. Turner's words to writing, summarizes Mr. Turner's words or describes the conversation in which Mr. Cookson interviewed Mr. Turner to learn the facts of the claim."

Appellee responded with a motion *in limine* to prohibit appellant from asking any questions about the GAB claims file that Smith and Cookson had produced as agents of Grange. According to appellee, GAB's claims file is not discoverable due to both the work-product doctrine and the attorney-client privilege. After additional arguments in chambers prior to trial, the trial court made the following ruling:

"Let me first say, that the first statement, it's a written note by Cookson and it says, patient [*sic*] saw cows and questions liability, is not, to me is not a real clear statement of what's said. I'm going to not allow the Plaintiff to call Cookson or introduce any evidence about the file, for the reasons I have mentioned here today.

"* * *

"Yes, I think you can call Turner on cross-examination and question him about the cows and that sort of thing, but I don't think you can then call Cookson or

---

1. A copy of this activity log was given to appellant during the deposition of Melanie Smith, another adjuster who worked on the case after Cookson left GAB.

Smith as representatives of the insurance company as to things that were in the file as to statements being made by him, because if I do, any time you have the Defendant take the stand, can you then call the adjuster to say, 'Well, did he tell you this?' or 'Did he tell you that?', and I just think we open the flood gates that way. I think you can talk to Turner and use your client to say where the cows were and who owned cows, and your client can say he let him back in his gate and those were the only cows there and that sort of thing, but I don't think you can use Cookson.

"Let me also say that the statement that Cookson has is not real clear in itself."

On appeal, appellant contends that the GAB's claims file documents he requested pertained directly to a primary issue of the litigation, *i.e.,* the ownership of the cow. Since the documents were prepared in the normal course of GAB's business under contract with Grange, appellant argues that the documents are discoverable pursuant to Civ.R. 26(B)(1).[2] Appellant also rejects appellee's argument that the documents are protected by either the work-product doctrine or the attorney-client privilege. In the alternative, however, appellant argues that even if the documents are protected by either theory, they are still discoverable under the "good cause" exception of Civ.R. 26(B)(3).[3]

The management of discovery lies within the sound discretion of the trial court. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659, paragraph one of the syllabus; *Karmasu v. Bendolph* (Feb. 21, 1996), Scioto App. No. 95CA2370, unreported, 1996 WL 79660. An appellate court reviews a trial court's ruling on a matter of discovery for an abuse of discretion. *Daggett, supra,* at 58, 63 O.O.2d at 90, 295 N.E.2d at 661; *Glick v. Marler* (1992), 82 Ohio App.3d 752, 758, 613 N.E.2d 254, 258–259; *Smith v. Klein* (1985), 23 Ohio App.3d 146, 151, 23 OBR 387, 392–393, 492 N.E.2d 852, 858–859.

---

**2.** Civ.R. 26(B)(1) states:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things * * *."

**3.** Civ.R. 26(B)(3) states:

"[A] party may obtain discovery of documents * * * prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor. * * * A statement of a party is (a) a written statement signed or otherwise adopted or approved by the party, or (b) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement which was made by the party and contemporaneously recorded."

An abuse of discretion connotes an attitude on the part of the trial court that is arbitrary, unreasonable, or unconscionable. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24, 30–31. Moreover, when applying this standard of review, an appellate court may not freely substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184–1185.

Generally, a party may obtain discovery regarding any unprivileged matter that is relevant to the pending litigation. Civ.R. 26(B)(1). One method of obtaining discoverable material is to compel the production of documents from a person who is not a party to the action pursuant to Civ.R. 34(C) (production of documents) and Civ.R. 45 (subpoena). However, Civ.R. 45(F) expressly provides that this rule shall not be construed as authorizing a party to obtain information that is protected by any privilege authorized by law.

In the landmark case of *In re Klemann* (1936), 132 Ohio St. 187, 7 O.O. 273, 5 N.E.2d 492, the plaintiff was injured when his car was struck by an automobile driven by the defendant on behalf of his employer. The driver completed a casualty report, which he gave to his employer, who forwarded the report to a local insurance agency, which then forwarded the original report to the insurance company and a copy of the report to the insurance company's attorney who was representing the employer. When the plaintiff later sought production of the casualty report, the defendants claimed that the report was privileged and therefore was not discoverable. The Supreme Court held:

"Where an insurer receives a report from its insured concerning a casualty covered by its policy of insurance, such report becomes the property of the insurer and subject to its complete control; and, when the insurer transmits it to its counsel for the purpose of preparing a defense against a possible law suit growing out of such casualty, such report constitutes a communication from client to attorney and is privileged against production and disclosure * * *." *Id.* at paragraph one of the syllabus.

More recently, in *Witt v. Fairfield Pub. School Dist.* (Apr. 22, 1996), Butler App. No. CA95–10–169, unreported, 1996 WL 189040, the court relied upon *Klemann* to prevent the production of witness statements taken by an insurance company. In that case, a child was injured while leaving the school at recess and the parents sued the school and the child's teacher for negligent supervision. A few months after the accident, the school's liability insurer obtained statements from the teacher, the school's nurse and the school's principal. When the plaintiffs later requested production of these statements, the defendants claimed the statements were privileged. The trial court agreed and denied the plaintiffs' motion to compel their production. On appeal, the appellate court agreed that the statements were protected by the attorney-client privilege. The court noted

that "while *Klemann* refers to reports rather than statements, there is no distinction between reports and statements for purposes of asserting the attorney-client privilege." *Id.* See, also, *Roman v. Ivanho, Inc.* (Jan. 31, 1994), Stark App. No. CA–9302, unreported, 1994 WL 45837.

■ In the spirit of *Klemann,* and like the defendants in *Witt* and *Roman,* the defendant in this case spoke with an adjuster hired by his insurance carrier to investigate an incident that was potentially covered by an insurance policy issued to the defendant. This defendant, like thousands of other insureds in Ohio, was required to give a statement to his insurer or risk the insurer's denying him coverage for this incident. A brief note purportedly summarizing the defendant's statement to the GAB adjuster was then provided to Grange, which in turn provided the statement to defendant's counsel in order to prepare a defense against a possible lawsuit arising out of this alleged incident. As a result, this notation regarding the defendant's statement constitutes a communication from client to attorney and is privileged against production and disclosure.[4] Furthermore, like the trial court, we conclude that the notes taken by Cookson are too summary and vague to be classified as Turner's statements absent some acknowledgement or ratification by Turner. See Civ.R. 26(B)(3), cited at fn. 3 above.

■ We also note that appellant is not entitled to the documents under the "good cause" exception, of Civ.R. 26(B)(3). According to this rule, documents prepared in anticipation of litigation are conditionally privileged. That is, although initially considered privileged, these documents are subject to discovery if the requesting party demonstrates good cause. However, in this case, we have held that the documents requested by appellant are protected by the attorney-client privilege and are thus absolutely privileged and not subject to disclosure in the absence of a valid waiver of the privilege by the client.

After reviewing the record in this matter, we hold that the trial court's decision to deny appellant's motion to compel discovery of specific documents in GAB's claims file was not arbitrary, unreasonable, or unconscionable. Accordingly, appellant's first assignment of error is overruled.

## II

■ In his second assignment of error, appellant argues that the trial court improperly excluded evidence that was relevant both to prove that appellee

---

4. Appellant's reliance upon *Moellering v. Schweitzer Constr. Co.* (Sept. 9, 1987), Hamilton App. No. C–860654, unreported, 1987 WL 16789, is misplaced. In that case, the court held that the plaintiffs were entitled to discover "only those portions of the claims file that are not shown by appellant to be privileged." In this case, we have already determined that the only claims file documents requested by appellant are privileged.

owned the cows involved in this incident and to impeach appellee's denial of ownership. The specific evidence that appellant sought to introduce was the testimony of GAB adjusters Cookson and Smith, the activity log purportedly containing an admission of ownership by appellee, evidence of prior inconsistent statements by appellee and evidence of appellee's liability insurance.

The admission or exclusion of evidence lies within the sound discretion of the trial court. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233, 1236–1237; *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. A trial court's exclusion of evidence will not be reversed on appeal absent an abuse of that discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493–494. An abuse of discretion connotes an attitude on the part of the trial court that is arbitrary, unreasonable or unconscionable. *Franklin Cty. Sheriff's Dept., supra.* Moreover, when applying this standard of review, an appellate court may not freely substitute its judgment for that of the trial court. *Jane Doe 1, supra.*

Appellant's arguments in this assignment of error regarding the testimony of Cookson and Smith, the activity log, and the evidence regarding appellee's alleged prior inconsistent statements were essentially disposed of above. That is, appellant concedes in his brief that the "purpose of calling Mr. Cookson and Ms. Smith was to impeach Mr. Turner's deposition and trial testimony that he did not see or own the cow." These two witnesses could impeach appellee's denial only by testifying about the allegedly inconsistent statement made by appellee to Cookson as noted in the activity log. However, we have already determined that the activity log contained information that is protected by the attorney-client privilege and is therefore inadmissible. Since the witnesses' testimony about information contained in the activity log was inadmissible, and since appellant has failed to allege the existence of any inconsistent statements other than the purported statements made to Cookson, the trial court did not abuse its discretion by excluding this evidence.

The final issue in this assignment of error concerns the trial court's exclusion of evidence concerning appellee's liability insurance. Generally, Evid.R. 411 states that evidence that a person was insured against liability is not admissible upon the issue of whether he acted negligently. However, the rule also provides an exception to the general rule. That is, the rule permits the admission of evidence of liability insurance "when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness."

In this case, appellant argues that he offered evidence of appellee's liability insurance in order to demonstrate ownership and bias. Appellant claims that the

"issue of ownership allowed appellant to show the jury that Mr. Turner spoke with his insurance company about ownership and made certain admissions to [it]." In addition to the fact that these statements are privileged, we also hold that this evidence does not fall within the exception provided in Evid.R. 411.

As noted in 1 Giannelli & Snyder, Evidence (1996) 350, Section 411.5, insurance coverage of certain objects or premises is probative of a party's ownership of those objects or premises. This rule is based on the presumption that persons would not state that they have or do not have insurance on an object which they did not own. For example, in *State v. Laub* (1993), 86 Ohio App.3d 517, 621 N.E.2d 585, the defendant was charged with aggravated vehicular homicide. During the state's case, a witness to the accident was asked what the defendant said when he got out of the car. Over counsel's objection, the witness testified that the defendant stated that he had no insurance. The appellate court affirmed the admission of this evidence because one of the issues in the case was whether the defendant had operated the vehicle involved in the accident. Because the defendant had not stipulated his operation of the vehicle in question, the court held that "[t]he jury was entitled to hear the subject statement for whatever help it would be in deciding the disputed fact." *Id.*, 86 Ohio App.3d at 519, 621 N.E.2d at 587.

Applying the logic of the rule to the particular facts in this case, we hold that the trial court properly excluded evidence of appellee's liability insurance. In this case, although appellee admits that he owns cows and that he has liability insurance that covers his cows, appellee denies that it was his cows which caused appellant's accident.

There is nothing intrinsic either to the policy or the cows that would properly assist the appellant in identifying the wandering bovine as belonging to the appellee. We do not believe that Evid.R. 411 permits appellant to use the existence of appellee's liability insurance, in general, to establish his ownership of an unidentified object. The following example illustrates an appropriate use of this rule of evidence: Appellant's vehicle strikes a red and white cow which has been branded "JT"; during discovery, appellee discloses a liability policy which requires all of his livestock to be branded "JT," appellee's initials; appellee later denies he owned the cow, branded "JT," which appellant struck; appellant then uses the liability policy to establish that appellee owns livestock branded "JT."

Appellant next claims that the "issue of bias allowed appellant to show that Mr. Cookson now works for Mr. Turner's insurance company." We hold that this evidence does not fall within the exception enumerated in Evid.R. 411. 1 Giannelli & Snyder, Evidence (1996) 350, Section 411.6, provides that evidence of insurance may be admitted in order to prove bias or prejudice on the part of a

witness. A classic example of the application of this rule occurred in *Ede v. Atrium S. OB–GYN, Inc.* (1994), 71 Ohio St.3d 124, 642 N.E.2d 365. That case involved a medical malpractice action against a gynecologist and his corporation. When the doctor called another gynecologist to testify as an expert on his behalf, the plaintiff sought to demonstrate that both doctors were insured by the same malpractice carrier. According to the plaintiff, the expert had a potential bias and financial interest in the outcome of the case because fewer successful malpractice claims meant lower premiums charged for malpractice insurance. Although the trial court excluded the evidence, the Supreme Court reasoned that the evidence was admissible because the trial court did not appreciate the probative value of establishing that both doctors were insured by the same company.

We hold that the trial court properly excluded the evidence regarding appellee's liability insurance because Cookson, the person whom appellant wanted to impeach in this case, was not called as a witness on behalf of appellee. If appellee had called Cookson as a witness to testify that his investigation of this incident revealed that appellee's cows were not involved, then appellant could have impeached Cookson's testimony by demonstrating that it was in his employer's best interest to deny liability coverage for the incident. However, since appellee admitted he was not going to call Cookson as a witness and since we have already held that it was improper for appellant to call Cookson as an adverse witness on cross-examination, the trial court properly excluded this evidence.

Accordingly, appellant's second assignment of error is overruled.

### III

Appellant contends in his third assignment of error that the trial court improperly denied his motion for a new trial filed pursuant to Civ.R. 59(A)(1) and (9).[5] According to appellant, he was entitled to a new trial because the court's rulings denying his motion to compel and excluding the various pieces of evidence regarding appellee's liability insurance prevented him from having a fair trial.

The granting of a motion for a new trial rests in the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that

---

5. Civ.R. 59(A) states that a new trial may be granted upon any of the following grounds:

"(1) Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

"* * *

"(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application[.]"

discretion. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus; *Thompson v. Hayslip* (1991), 74 Ohio App.3d 829, 836, 600 N.E.2d 756, 761. Based on our determinations that the trial court did not err in its discovery and evidentiary rulings, we hold that the trial court did not abuse its discretion by denying appellant's motion for a new trial. Accordingly, appellant's third assignment of error is overruled. Therefore, the judgment of the Scioto County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

STEPHENSON, P.J. and PETER B. ABELE, J., concur.