[Cite as *Whitacre v. Nationwide Ins., Co.*, 2012-Ohio-4557.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SCOTT J. WHITACRE | ) | CASE NO. 11 BE 5 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| NATIONWIDE INS. CO., et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Belmont County, Ohio Case No. 09 CV 188

JUDGMENT: Affirmed. Remanded.

APPEARANCES:

For Plaintiff-Appellee: Atty. Richard L. Lancione
Lancione, Lloyd & Hoffman
3800 Jefferson Street
P.O. Box 560
Bellaire, Ohio 43906

For Defendant-Appellant: Atty. Ralph F. Dublikar
Atty. Eric J. Stecz
Baker, Dublikar, Beck, Wiley & Mathews
400 South Main Street
North Canton, Ohio 44720

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: September 28, 2012

WAITE, P.J.

## Summary

{¶1}   Appellee, Scott J. Whitacre, was involved in a motorcycle accident caused by an insured's dog.  Appellant, Nationwide Insurance Company, the dog owner's insurance company, is alleged by Appellee to have entered into a verbal contract to pay all of his medical expenses.  Appellee contends that the contract was partially performed when Appellant paid some of his medical bills.  When Appellant stopped paying medical bills and Appellee was denied treatment, he filed suit against both the dog owner and Appellant.  Appellee's claims against the dog owner were settled and he was dismissed from the lawsuit, however, the settlement and the agreed dismissal entry did not extend to his contract claims against Appellant.  Appellant now appeals the trial court's ruling allowing discovery of material in the claims file generated by Appellant prior to the date of the lawsuit and depositions of the two claims adjusters who communicated directly with Appellee.  The trial court's decision to allow discovery did not amount to an abuse of discretion because Appellant failed to show privilege with regard to the material it seeks to protect.  However, in compliance with the Ohio Supreme Court's decision in *Peyko v. Frederick*, 25 Ohio St.3d 164, 167, 495 N.E.2d 918 (1986), prior to allowing material to be released to Appellee, the trial court must conduct an *in camera* inspection to determine whether any genuinely privileged material is contained in the file.

## Factual and Procedural History

{¶2}   On or about November 27, 2007, Appellee, Scott J. Whitacre, was driving his motorcycle on State Route 800 and was injured when a unrestrained dog,

owned by Arthur Reed, darted onto the highway in front of him causing him to lose control of the motorcycle. After the accident he was visited by a representative of Appellant, Nationwide Insurance Company. During the visit, which was witnessed by Appellee's mother, the claims adjuster allegedly made statements acknowledging Mr. Reed's liability for the accident and promising to cover all resulting medical expenses and loss of wages. Appellee maintains that he provided the claims adjuster with the medical information necessary to allow payments to begin and that the adjuster left a pamphlet. This pamphlet, in addition to the adjuster's verbal statements and subsequent payment of a portion of his medical bills, form the basis of his contract claim against Appellant. It is undisputed that Appellant began to pay Appellee's medical bills after this visit. It is also undisputed that Appellant did so without any written agreement. Appellee maintains there was a verbal contract; Appellant claims the payments were voluntary and gratuitous.

{¶3} A portion of Appellee's medical needs were paid for by Appellant and a portion were paid by his own insurance company. Appellee's doctor declined to continue treatment, although an additional surgery was needed, because several thousand dollars in medical bills remained unpaid. Appellee maintains that Appellant was aware that his medical expenses were unpaid and that the doctor was withholding additional necessary treatment as a result of Appellant's nonpayment. Appellee filed suit against both the insured and Appellant, alleging liability for the accident against the insured for failure to properly restrain his dog and breach of a verbal contract and bad faith failure to pay medical bills against the insurance company. Appellee alleged damages resulting from both the accident and the failure

to pay medical expenses and sought separate money judgments against the insured and against Appellant.

{¶4} Appellant filed for summary judgment on the verbal contract and bad faith claims. In support of the motion, Appellant filed an affidavit from the claims adjuster who met with Appellee and authorized the payment of some of his medical bills. In her affidavit, the adjuster denied forming a verbal contract. Appellee filed his opposition to summary judgment, claimed that a contract was formed, and supported his damages claim with a letter from his doctor and copies of additional bills. The trial court denied Appellant's motion for summary judgment on December 21, 2009. On March 12, 2010, Appellee submitted an agreed entry, signed by the attorneys for all parties, dismissing all claims against only the insured, and explicitly preserving claims against Appellant. The entry was adopted by the court on March 16, 2010.

{¶5} After deposing Appellee, Appellant filed a second motion for summary judgment on September 30, 2010. Appellee filed a motion to compel production of relevant documents created prior to the suit and to compel depositions of the claims adjusters who were involved in the claim. He also sought an extension of time to respond to the summary judgment motion. During Appellee's deposition, additional unpaid medical bills were discussed. It appears Appellee was unaware of the additional bills when he filed suit and when he settled with Mr. Reed because they had been submitted directly to Appellant, but Appellant did not pay them and did not forward them to Appellee. Appellant refused to produce any internal documents pertaining to the claim and alleges generally that the entire claims file is protected by privilege and by the work-product doctrine. Appellant does not state the nature of the

privilege, or describe the material it claims should be protected. The cross motions were set for hearing on December 4, 2010. The trial court granted Appellee's motion to compel and motion for an extension of time to respond to summary judgment and denied Appellant's motion for a protective order on January 4, 2011. Appellant filed a timely notice of appeal from the court order compelling discovery. On appeal both parties have filed their briefs and the matter is now ripe for review.

Argument and Law

ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR PROTECTIVE ORDER AND ORDERED APPELLANT TO PRODUCE INFORMATION CONTAINED IN ITS CLAIM FILE AND MAKE ITS ADJUSTERS AVAILABLE FOR DEPOSITION.

{¶6}   The trial court has inherent power to control discovery. Civ.R. 26(C); *State ex rel. Pfeiffer v. Common Pleas Court*, 13 Ohio St.2d 133, 235 N.E.2d 232 (1968); *State ex rel. Grandview Hosp. Ctr. v. Gorman*, 51 Ohio St.3d 94, 554 N.E.2d 1297 (1990). A trial court's decision concerning discovery will not be disturbed on review absent an abuse of discretion. *State ex rel. The V Companies v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198, 200-201 (1998). Abuse of discretion connotes more than an error of judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, (1983).

{¶7} When applying the abuse of discretion standard, "a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991). "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985).

{¶8} Civil discovery of all relevant, unprivileged, information is permitted under Civ.R. 26. With regard to this suit, Civ.R. 26 provides:

**(B) Scope of discovery**. Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:

(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

* * *

(3) Trial preparation: materials. * * * a party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor. * * *

* * *

(6) Claims of Privilege or Protection of Trial-Preparation Materials.

(a) Information Withheld.  When information subject to discovery is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

The test for relevancy under Civ.R. 26 "is much broader than the test to be utilized at trial.  It is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence."  *State ex rel. Fisher v. Rose Chevrolet*, 82 Ohio App.3d 520, 523, 612 N.E.2d 782, 784 (1992).

**{¶9}**  "[T]he burden of showing that testimony [or documents] sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude [them.]"  *Peyko v. Frederick*, 25 Ohio St.3d 164, 166,

495 N.E.2d 918 (1986). In Ohio, attorney-client privilege is established both by statute and at common law. The statutory privilege, R.C. 2317.02(A), is a testimonial privilege and provides generally that an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client." *See also*, *State ex rel. Leslie v. Ohio Housing Finance Agency*, 105 Ohio St.3d 361, 2005-Ohio-1508, 824 N.E.2d 990, ¶18. The common law privilege governs those areas not covered by statute. *Id.* At common law, communication is protected "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Id.* at ¶21 quoting *Reed v. Baxter*, 134 F.3d 351, 355-356 (C.A.6, 1998). Exceptions to attorney-client privilege other than waiver by the client include, but may not be limited to, the crime-fraud exception, a self-protection exception, and suits between the attorney and the client. *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶3.

**{¶10}** In support of its single assignment of error, Appellant contends that discovery is prohibited in a suit by a party against an insurance company that is not his or her own. In other words, only a policyholder may be entitled to discovery of a claims file. In support of this contention Appellant cites *Snyder v. Lincoln General Ins. Co.*, 3rd Dist. No. 3-97-4, 1997 WL 232246 (May 7, 1997) for the proposition that all suits against insurance companies by individuals other than the insured are

barred. According to Appellant, because all third party suits are barred, a third party may never obtain discovery documents from an insurance company. However, Appellant's argument that Appellee's suit is barred was heard by the trial court in Appellant's initial motion for summary judgment. When the trial court denied Appellant's initial motion for summary judgment, the trial court found that Appellee had sufficiently pleaded the elements of his case and that there were outstanding questions of fact that could not be resolved by the affidavit filed by Appellant in support of its summary judgment motion. Having passed this preliminary hurdle, Appellee, like any other plaintiff, was entitled to discovery.

{¶11} After the denial of Appellant's first motion for summary judgment both parties sought discovery. Appellant never provided any discovery material. Appellee, however, was deposed by Appellant. Appellant then filed a second motion for summary judgment, simultaneously sought a protective order, and continued to avoid responding to Appellee's discovery requests. Appellant did not include any information concerning efforts to resolve the discovery issues, nor did it provide a file log to explain what documents were in the file and/or what specific privileges it was asserting as to these documents. Appellee filed a motion to compel discovery and sought an extension of time to respond to Appellant's second motion for summary judgment so that the result of discovery could be included in the response.

{¶12} This appeal was filed from the trial court's decision to grant Appellee's motion to compel discovery and to deny Appellant's motion for protective order. Because the trial court made an initial determination that there are issues of fact in the underlying contract action that cannot be resolved without further proceedings,

and that ruling is not before us for review, we do not have before us the issue of whether there is an absolute bar to third party suits. Appellee's claims are based on the premise that he is not a third party, but instead, has formed his own contract with Appellant to pay his claim. Hence, he claims that he is not an interloping third party who seeks to interfere with the contract between the insured and the company. Instead, Appellant looks to buttress his own contractual claim. Appellant's arguments ignore this distinction. However, because Appellant's argument that Appellee is barred from discovery is inseparable from its argument that there is a complete bar to third party suits, we will evaluate the cases Appellant cites to determine whether they alter the trial court's discretionary power over discovery matters. We note that a finding by us that there is no bar to discovery, or even no absolute bar to third party suits, does not change the trial court's ability, if presented with additional evidence and based on the particular facts of the case following discovery, to ultimately determine that the underlying action may, nevertheless, be so barred.

{¶13} Appellant initially cites three cases, *Chitlik v. Allstate Ins.*, 34, Ohio App.2d 193 (1973); *D.H. Overmyer Telecasting Co., Inc. v. American Home Assur. Co.*, 29 Ohio App.3d 31 (8th Dist.1986); and *Murrell v. Williamsburg Local School Dist.*, 92 Ohio App.3d 92, 634 N.E.2d 263 (12th Dist.1993) in support of its contention that "[i]t is well settled under Ohio law that an injured party cannot directly sue the insurer of an alleged tortfeasor for bad faith or other damages because the injured party is not a third-party beneficiary of a liability insurance contract." (Appellant's Brf., p. 5.) Appellant cites a fourth case, *Snyder, supra*, for the proposition that a plaintiff cannot maintain an action directly against a tortfeasor's liability insurer for causes of

action that are the result of the insurer's own actions. (Appellant's Brf., p. 6.) While they may have some persuasive effect, none of the caselaw cited by Appellant is binding on us or on the trial court. More importantly, these cases do not stand for the principles purported by Appellant or apply to the facts of this case as reflected in the record, here.

{¶14} Both *Chitlik* and *Overmyer* are Eighth District Court of Appeals cases. In *Chitlik* the Eighth District dismissed a suit filed directly against an insurer for the torts of the insured. The *Chitlik* court cited the pre-1999 version of R.C. 3929.06 for the principle that an injured party must first obtain a money judgment for damages against the insured party before the injured party can file any action directly against the insurer for payment of the injury caused by the insured. The appellant in *Chitlik* attempted to short-cut the necessary step of establishing the insured's liability and the amount of damages before taking action against the insurer for payment and instead filed suit directly against the insurance company to recover for the insured's tort. The appellant in *Chitlik* claimed that he was entitled to relief directly from the insurance company because, due to the injury inflicted on him by the insured, he was a third party beneficiary of the liability insurance contract between Allstate and the insured and "may maintain an action against Allstate based on that contract." *Chitlik* at 195. The Eighth District applied the well-established principle that injured parties are not third party beneficiaries of insurance agreements, in addition to the requirement found in the version of R.C. 3929.06 then in effect, to dismiss the suit. Applying the earlier version of R.C. 3929.06, the *Chitlik* court found that an injured party cannot sue an insurance company directly for the torts of the insured. *Chitlik*

does not establish a bar against direct suits against an insurance company for damages allegedly caused by the insurance company itself. Instead, it affirms the principle that an injured party may not sue an insurance company for the torts of the company's insured before the insured's liability is even established. Nothing in *Chitlik* addresses discovery generally, and nothing in *Chitlik* addresses what discovery, if any, may ultimately be sought by a party who is not a policyholder but is suing an insurance company for injuries caused by the company's insured.

**{¶15}** In *Overmyer* the Eighth District revisited the relationship between an injured third party and the alleged tortfeasor's insurance company. Appellant in *Overmyer* sought a declaratory judgment as to coverage for an alleged tort before obtaining a judgment against the tortfeasor. The *Overmyer* court found that although a party to the contract, generally the insured, may be entitled to a declaratory judgment on the issue of coverage, a party who claims injury, but has not obtained judgment against the alleged tortfeasor, does not have "rights in danger of impairment or loss" sufficient to establish standing to seek a declaratory judgment from the tortfeasor's insurance company. *Id.* at 33. The *Overmyer* decision held that a third party who had not even obtained a judgment establishing the liability of the insured party was not entitled to a declaratory judgment on the issue of coverage by the tortfeasor's insurance policy. Again, nothing in this decision addresses discovery by any party.

**{¶16}** The Twelfth District, in *Murrell*, addressed the same point made by the Eighth District in *Chitlik*, citing the earlier version of R.C. 3929.06 that an injured party may "file a supplemental petition against the tortfeasor's insurer after recovering a

judgment against the tortfeasor which has not been satisfied within thirty days." *Murrell, supra,* at 94. The caselaw cited by the *Murrell* court in support of this proposition discusses suits filed directly against the insurance company seeking damages for torts committed by the insured party. The plaintiff in *Murrell* filed suit against a school district and the district's insurance company for damage alleged to have been caused by a bus driver. The plaintiff sought recovery directly from the company for "bad faith" in denying his claim for recovery. The injured plaintiff did not have, and apparently never sought, a judgment establishing the bus driver's liability or the amount of damage. The suit was dismissed as frivolous after the plaintiff did not comply with the insurance company's request that he voluntarily dismiss the suit and his subsequent failure to respond to the company's motion to dismiss. An appeal was filed from the dismissal of the suit and order awarding attorney's fees to the insurance company. The *Murrell* court confirmed that direct suits against an insurance company for the torts of the insured, without establishing liability of the insured, are not permitted under Ohio law and suggested that an insurance company's duty to adjust claims in good faith runs only from the company to the insured and not to third parties. Discovery was not an issue in these cases. More importantly, these cases are completely distinct, factually. They prohibit a claimant from directly suing an insurance company for the torts of the insured without first getting a judgment as to the insured's liability. Appellee in this case has received such a determination, but more importantly, he seeks to sue the company not for payment of his damages pursuant to the policyholder's insurance policy, but directly, under the verbal contract he claims to have with the company. He acknowledges

that he is not a policyholder, but is suing to enforce the terms of his own alleged contract with Appellant, and not Mr. Reed's (the insured's) contract. This is the crucial distinction that makes Appellant's caselaw inapplicable and thus, its reliance on this same caselaw to provide a blanket bar to discovery equally specious. Nothing in these decisions suggests that the trial court's decision in the matter at bar to allow discovery was prohibited by law or an abuse of discretion.

{¶17} Finally, Appellant moves away from cases that involve an injured party suing an insurance company directly for the torts of the insured and cites *Snyder v. Lincoln General Ins. Co.*, for the proposition that a third party who alleges common law causes of action against an insurance company is barred from suits under the same rationale provided in *Chitlik*. The *Snyder* court stated that "[t]he *Chitlick [sic]* rule was imposed to prevent the admission of a tortfeasor's insurance in a tort case as the disclosure of said insurance coverage is inadmissible at trial because it is highly prejudicial to the defendant." *Snyder, supra*, p. 2. The *Snyder* court further clarified that "in actions for damages by reason of alleged negligence, evidence as to the financial standing of the parties is inadmissible," and concluded, "[t]herefore, the trial court properly dismissed appellant's claim against Hoover and Lincoln General." *Snyder, supra*, p. 2. In addition to finding that the suit was correctly dismissed to prevent the improper disclosure of financial information, the *Snyder* court further identified as a basis for dismissal the trial court's finding that "appellant suffered no damages as he did not miss the statute of limitations nor was he harmed by Lincoln General's failure to afford appellant the opportunity to settle early * * * [h]aving failed to assert any legally recognizable damages, appellant failed to state a claim upon

which relief could be granted." *Id.* The appeal before the *Snyder* court, unlike the appeal before us, was from a Civ.R. 12(B)(6) motion, and tested only the sufficiency of the allegations in the complaint.

**{¶18}** Even if *Snyder* provided some authority, and was not a decision of a sister district based on a prior version of a statute that does not apply to the facts at bar, the appellate court's decision in *Snyder* does not address the issue before us. In this instance, Appellee has passed the hurdles the injured party failed to clear in *Snyder*. He has alleged damages resulting from the actions of the insurer, not the insured; he is not first filing against the insurance company for the torts of an insured without establishing the liability of the insured; and he is not seeking inadmissible information (or any information) concerning the limits of the insured's policy. This case comes to us in a completely different posture from that addressed in *Snyder* and all the rest of Appellant's caselaw, and with completely different facts. Nothing in *Snyder* suggests that the trial court in this instance, once it determined that Appellee had adequately pleaded all of the elements of his cause of action in contract and raised issues of material fact in order to survive dismissal in summary judgment, abused its discretion by allowing Appellee to conduct discovery in this matter. The issue before us is whether the trial court abused its discretion when allowing discovery relative to the existence of a verbal contract directly between Appellee and Appellant, not the sufficiency of the allegations in the complaint. The opportunity to test the complaint has passed and the question of whether Appellee should have survived summary judgment is not properly before us. Appellant is certainly free to continue or renew arguments as to the existence of a bar to all or a portion of

Appellee's underlying suit, under the same or new theories, as facts emerge or change during discovery. If discovery discloses material facts that do not support Appellee's position, his action may well be dismissed. Currently, however, all such arguments are issues to be determined by the trial court, alone, at some future date. The only issue properly raised to this Court is whether Appellee should be allowed to conduct discovery in his contract action against Appellant. The record here clearly reveals that Appellant has failed to establish an absolute bar to discovery and the trial court's ruling allowing discovery was not an abuse of discretion.

{¶19} Appellant urges that even if Appellee is able to maintain an action against the company alleging the existence of a verbal contract, he is "barred from obtaining the discovery he seeks directly from Nationwide." (Appellant's Brf., p. 6.) First, Appellant argues that no non-policyholder may ever obtain discovery from an insurance company. This argument is based on the proposition that no non-policyholder may even sue an insurance company. As we have already seen, however, the caselaw Appellant cites for this general proposition does not support it. None of the cases on which Appellant relies supports such a broad proposition. In the alternative, according to Appellant, Appellee is barred because the claim file and its claims adjusters are protected from discovery and from depositions by the doctrines of privilege or work product. In the trial court, Appellant failed to identify any privilege, but on appeal Appellant now specifies attorney-client privilege. However, Appellant has completely failed to properly invoke this privilege. Appellant has never specifically identified the protected documents, has offered no privilege log and has provided no indication that any of the documents requested were ever

transferred to an attorney to receive advice or counsel. Nothing in the record supports Appellant's claim that any portion of the file is protected by either the work-product doctrine or the attorney-client privilege.

{¶20} Appellant urges us to generally adopt the rare instances in which courts have found individual reports or other discrete pieces of information to be protected and broadly apply these principles to include a complete protection of the claims file at issue. The fact that courts have occasionally found that documents that have been transmitted to or otherwise provided to retained counsel representing an insurance company in a specific litigation are protected is far from a broad automatic protection for all insurance claims files in all situations. Insurance claims files are, in fact, discoverable in a variety of suits, including actions under R.C. 1343.03(C) for prejudgment interest. In such suits the Ohio Supreme Court has found that if an insurance company "asserts the attorney-client privilege with regard to the contents of the 'claims file' the trial court shall determine by *in camera* inspection which portions of the file, if any, are so privileged." (Emphasis sic.) *Peyko v. Frederick*, 25 Ohio St.3d 164, 167, 495 N.E.2d 918 (1986).

{¶21} Appellant relies heavily on the Ohio Supreme Court's decision in *In re Klemann*, 132 Ohio St. 187, 5 N.E.2d 492 (1936), which concerned a specific report that was prepared at the instruction of the insurance company, then delivered to, and retained by, its attorney for the purpose of preparing for litigation. The Court in *Klemann* found that under these circumstances the subject report was privileged so as to prevent the attorney from giving testimony concerning the report. This specific privilege attaches to a document created for, transmitted to, and retained by an

attorney in the course of litigation. The privilege allows a client to prevent the attorney's disclosure of the document's contents. However, this limited privilege does not serve to protect the entire contents of a claims file, which was not generated for an attorney or transmitted to him. This is also not a rule that protects Appellant from disclosing its own information kept in the ordinary course of business, which is what Appellee seeks and what Appellant claims is barred.

{¶22} Although there are a small minority of district court decisions that cite *Klemann* in passing, none of them apply it in the broad manner suggested by Appellant. The Supreme Court, however, has both distinguished and limited *Klemann* in every decision that refers to it for any principle other than its statement of the broad policy purposes behind a privilege. The Court has summarized its various distinctions and explanations of *Klemann* succinctly: "A document of the client *existing before it was communicated* to the attorney is not within the present privilege so as to be exempt from production. But a *document* which has *come into existence as a communication* to the attorney, being itself a communication is within the present privilege." (Emphasis sic.) *State v. Jeffries*, 119 Ohio St.3d 265, 2008-Ohio-3865, 893 N.E.2d 487, ¶10. Thus, documents produced by a company in the course of business do not become privileged merely because they are given to an attorney, and they are certainly not subject to privilege where there is no indication that they were ever transmitted to an attorney or referenced when seeking representation. When documents requested in discovery were produced by the company itself, "there are no statutory provisions which provide against the production of such reports or records or testimony concerning them by the party, his nonattorney employees, or

anyone else." *In re Story*, 159 Ohio St. 144, 148, 111 N.E.2d 385 (1953) (distinguishing the finding in *Klemann* that the party's attorney could not reveal the contents of a report that was produced for him and remained in his possession as it was protected by privilege). Although the record reveals that Appellant has not properly invoked any privilege or identified any specific material that would be subject to some privilege because of their misguided argument that the entire file is protected, we believe that the best course is that prescribed by the Supreme Court in *Peyko*. On remand for further proceedings, the trial court is ordered to examine the claims file to determine what material, if any, may be protected by attorney-client privilege, prior to the disclosure to Appellee.

{¶23} In addition to attorney-client privilege, Appellant also invokes the work-product doctrine on appeal. The work-product doctrine, unlike the attorney-client privilege, belongs to the attorney, and protects the "attorney's mental processes in preparation of litigation, establishing 'a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary.'" *Squire, Sanders, & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶55. We note that the work-product doctrine does not afford complete protection. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct.385 (1947). In Ohio, "attorney work product, including but not limited to mental impressions, theories, and legal conclusions, may be discovered upon a showing of good cause if it is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere." *Squire, Sanders & Dempsey*, ¶60. A showing of good cause under Civ.R. 26(B)(3) requires a demonstration of the need

for the materials, *i.e.*, a showing that the documents or the information they contain are relevant and otherwise unavailable. *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶16. Although, at its core, the work-product doctrine protects attorney's own thoughts and processes, protection extends to "[a]ny notes, documents, or memoranda prepared by the attorney or his representatives in preparation of litigation" in addition to "tangible things prepared in anticipation of litigation or for trial by or for [a] party." *State v. Hoop*, 134 Ohio App.3d 627, 640, 731 N.E.2d 1177 (12th Dist.1999); Civ.R. 26(B)(3). In *Dennis v. State Farm Ins. Co.*, 143 Ohio App.3d 196, 757 N.E.2d 849 (2001), we reversed a trial court's decision granting a protective order to an insurance company which shielded a claims file and prevented depositions of claims handlers. In *Dennis*, the party seeking discovery was the insured who had alleged the company had breached a good faith duty in denying the insured's claim for recovery. Although *Dennis* is certainly factually distinct from the matter now before us, our finding that there is "nothing in Civ.R. 26(B)(3) that can be read as a limitation on a party's right to initiate the oral deposition of an opposing party" is applicable to any instance in which a party seeks to avoid a deposition by invoking the work-product doctrine. *Id.* at 201. As we held in *Dennis*, the work-product doctrine, which explicitly protects only documents and tangible things, does not prevent Appellant from taking the depositions of the claims representative who met with Appellee, even if "[she] has no knowledge of any facts outside of those contained in the claims file." *Id.* at 200.

{¶24} With regard to the balance of the material that may be contained in the claims file, even if portions of the file produced prior to the instigation of the lawsuit

might be considered work-product, and it is not clear in this instance that they would be, Appellant has failed to provide the necessary statement under Civ.R. 26(C) detailing the effort made to resolve the matter prior to seeking a protective order. The same failure was grounds for reversal in *Dennis*. Even raised for the first time in this appeal, Appellant has failed to explain why the material in the claims file should fall within the work product protection. In suits between an insured and the insurer, such as *Dennis*, courts have held that material in the claims file is protected only after a claim is denied, because up to that point the insurance company is merely carrying out its contractual responsibilities to the insured. *Id.* at 203, *also*, *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 744 N.E.2d 154 (2001). Appellee has explicitly limited the material he seeks from the claims file to that prepared prior to the date his lawsuit was filed. Although he does not have the clear cut relationship to the insured that the plaintiff did in *Dennis*, and is not an actual policyholder, the origin and the nature of his alleged direct contractual relationship to the insurance company is the subject matter of the underlying dispute. Appellee is attempting to prove that he has a contract, although a verbal one, with Appellant, even while acknowledging that he is not a policyholder. Under these circumstances Appellee's cause of action, his motion to compel and his responses to Appellant's motion for protective order, appear to establish the elements of a good cause exception to the work product doctrine.

{¶25} The information the trial court ordered Appellant to produce is directly at issue, and because the existence of an oral contract is the pivotal question in this lawsuit, the need for discovery on this issue is compelling. *Squire, Sanders, & Dempsey, L.L.P,* ¶55, 61-62, and paragraph two of the syllabus. The information

Appellee seeks is under the sole control of Appellant and is not otherwise available to him. *Id.*; *also Jackson v. Greger*, at paragraph two of the syllabus. Appellant has offered no argument or caselaw in support of its contention that all material in the claims file is protected by the work-product doctrine other than the general assertion that the lawsuit itself should be barred. As we have explained, whether or not Appellant is correct that this suit should eventually be dismissed is not an issue before this Court. Appellant has offered no statement of efforts to accommodate Appellee's discovery requests, and has advanced no evidence or even arguments to prove the material in the claims file might be considered work product. Appellant has made no showing and requested no hearing to identify what material might be privileged. The documents sought by Appellee do not appear to be relevant to a denial of a claim, as was the case in *Breech v. Turner*, 127 Ohio App.3d 243 (4th Dist.1998) (where an insured's statements to his insurer's investigator for the purpose of determining liability were protected). The question of the insured's liability is settled, here. The information sought is directly relevant to the question of whether an enforceable contract existed between Appellant and Appellee and appears reasonably calculated to lead to admissible evidence that would facilitate the resolution of this issue and cannot be otherwise obtained. Civ.R. 26(B)(1) and (3). Under these circumstances, the trial court's decision to compel discovery was not an abuse of discretion. However, pursuant to *Peyko*, and out of an abundance of caution to ensure that no genuinely privileged material is turned over, the trial court "shall determine by *in camera* inspection which portions of the file, if any, are so privileged." *Id.* at paragraph two of the syllabus.

### Conclusion

**{¶26}** Appellant failed to discharge its burden under Civ.R. 26 to show the material sought was protected by attorney-client privilege or the work-product doctrine. There is no general bar to discovery of a claims file. The decision to allow discovery was not an abuse of discretion. The requests were directly relevant to the subject matter of the action and reasonably calculated to lead to discoverable evidence. However, because Appellant has belatedly invoked privilege, pursuant to *Peyko v. Frederick* an *in camera* inspection is required to determine if any portion of the file is privileged. The matter is remanded for an *in camera* inspection of the claims file and further proceedings according to law and consistent with this Court's Opinion.

Donofrio, J., concurs.

Vukovich, J., concurs.