[Cite as *Westfield Ins. Group v. Silco Fire & Sec.*, 2019-Ohio-2697.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WESTFIELD INSURANCE GROUP A/S/O FIRSTMERIT CORPORATION, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| Plaintiffs-Appellees | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2018CA00122 |
| | : | |
| SILCO FIRE & SECURITY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:  Appeal from the Stark County Court of
Common Pleas, Case No.
2016CV02329

JUDGMENT:  AFFIRMED

DATE OF JUDGMENT ENTRY:  June 28, 2019

APPEARANCES:

For Plaintiffs-Appellees:

KENNETH T. LEVINE
Three Valley Square, Suite 220
Blue Bell, PA 19422

MICHAEL W. DEWITT
4200 Regent St., Suite 200
Columbus, OH 43219

For Defendant-Appellant:

THOMAS J. CONNICK
25550 Chagrin Blvd., #101
Beachwood, OH 44122

*Delaney, J.*

{¶1}   Defendant-Appellant Silco Fire & Security appeals the judgment entries and the jury verdict of the Stark County Court of Common Pleas in favor of Plaintiff-Appellee Westfield Insurance Group a/s/o FirstMerit Corporation.

### FACTS AND PROCEDURAL HISTORY

### The Incident

{¶2}   FirstMerit Corporation housed its data storage center and disaster recovery center at a building located at 4455 Hills & Dales Rd. NW, Canton, Ohio ("Data Center"). Because of the computer equipment located in the building, FirstMerit required a fire suppression system that used a clean dry agent instead of water.

{¶3}   FirstMerit purchased an Inergen Fire Suppression System ("IFSS") manufactured by Ansul Corporation and hired Defendant-Appellant Silco Fire & Security to perform the installation designs/calculations to install the IFSS at the Data Center. The IFSS uses Inergen gas to remove oxygen and suppress a fire. Silco installed the IFSS at the Data Center in 2009. Silco performed regular service, inspection, and testing of the IFSS installed at the Data Center. There was no written master service agreement between Silco and FirstMerit as to maintenance of the IFSS.  Rather, the parties agreed that there was an oral contract for the maintenance of the IFSS.

{¶4}   On March 16, 2015, Gary Crow, a Silco service technician, was performing a semi-annual inspection and test of the IFSS at the Data Center. While Crow was conducting an inspection and test, the IFSS discharged. The discharge of the IFSS was very loud and caused the building to vibrate. Larry Remark, FirstMerit Maintenance

Technician, heard what sounded like a jet engine starting up. Remark went to check on Crow to make sure he was okay.

{¶5} At 10:45 a.m. on March 16, 2015, Eric Bowers, the FirstMerit IT Manager for Infrastructure, noticed his monitoring system showed a catastrophic event had occurred in the FirstMerit computer network. The phone system for the bank was not operational. Bowers could not reach anyone at the Data Center, so he drove from Akron to the Data Center in Canton. When he arrived, he saw Silco employees switching out the Inergen tanks. Bowers checked the computer servers and found he could not log on to the storage area network and knew something was wrong with the computer equipment. It was determined the noise from the IFSS discharge damaged the hard drives and computer equipment located in the Data Center.

{¶6} Crow contacted Silco employees Gerald Gray, field coordinator, and John Livigni, service manager, after the IFSS discharge. Gray reported to the Data Center and assisted Crow with replacing the discharged Inergen tanks and to discover why the system discharged. Crow and Gray tested the IFSS system and did not find a malfunction in the system. Crow and Gray used the original parts to reinstall fresh tanks and bring the IFSS system back online.

{¶7} At the conclusion of Silco's March 16, 2015 inspection and testing of the IFSS, Silco provided FirstMerit with a "Fire Suppression System Inspection & Testing Report" (hereinafter "Report"), which Silco required FirstMerit to sign. Ryan Rosenacre, Lead Maintenance Engineer for FirstMerit, signed the Report. Silco did not submit an invoice to FirstMerit for the March 16, 2015 inspection. The Report detailed the work Silco performed and the status of the IFSS.

{¶8} It is the practice of Silco to provide its customers with the Report at the conclusion of its inspection and test of the fire suppression system. At the bottom of the Report provided to FirstMerit, it included the following language:

**IMPORTANT CUSTOMER NOTICE**: At the request of Customer, Silco has performed inspection, testing, and maintenance services based on the requirements in the NFPA 2001, 12, 12A, 17 and 72 for the frequency checked on the first page of the report. Silco's inspection, testing, and maintenance work is based on the information provided to Silco by the Customer, such as as-built drawings. Silco recommends the Customer review the applicable NFPA codes (available for free at www.nfpa.org). The Customer is responsible for properly maintaining the system and ensuring all inspection, testing, and maintenance requirements are performed (e.g. monthly inspections, semi-annual inspections, etc.). The Customer is responsible for providing Silco access to the system components. If there are inaccessible spaces or if the Customer has any concerns about penetrations that may have been made to the enclosure, it is recommended that the Customer authorize Silco to conduct a room pressurization test. Any comments/recommendations contained in this report regarding system design issues do not mean the entire system was evaluated from a design perspective and other portions of the system are problem free. These design comments/recommendations are an observation the technician felt compelled to inform you about, but are outside the scope of Silco's inspection, testing, and maintenance services. If the Customer makes

changes to the hazard or the hazard's enclosure, it is recommended the Customer conduct a formal design evaluation. Formal system design evaluations are available by Silco upon request as additional services for an additional fee and are conducted by select individuals qualified to conduct these specialized evaluations.

**LIMITATION OF LIABILITY**: If Silco is found liable for any loss or damage arising from goods sold and/or work performed by Silco, then Silco's maximum liability shall be limited to Two Hundred Fifty Thousand Dollars ($250,000) and this liability shall be exclusive; upon request and with payment of an additional fee this maximum liability can be increased and the increased limit will be set forth in a letter provided by Silco. Silco shall not be liable for any claims for any improper and/or imperfect performance based on a failure of a system to function effectively due to causes beyond the control of Silco, such as wear and tear, tampering, changes to the protected area, failure of the owner to authorize modifications or repairs or conduct required or recommended inspections and faulty design/installation by others. Fire Suppression Systems create noise prior to and during a system discharge. Recent incidents have found certain hard drives may be sensitive to noise. Silco shall have no liability for any loss or damage as a result of noise.

{¶9} In 2013, Silco learned that Ansul issued a "white paper" stating noise from the discharge of an IFSS could damage newer computer technology, like hard drives.

Starting in 2013, Silco notified its customers of the risk to hard drives from noise generated by an IFSS discharge by including the following language on the Report:

> Fire Suppression Systems create noise prior to and during a system discharge. Recent incidents have found certain hard drives may be sensitive to noise. Silco shall have no liability for any loss or damage as a result of noise.

Over the course of Silco's service history with FirstMerit, FirstMerit signed at least nine prior Reports containing the above Limitation of Liability language. FirstMerit never contacted Silco regarding the risk to computer equipment from the noise from a discharge of the IFSS to the computer equipment.

{¶10} FirstMerit determined it could not repair the computer equipment damaged by the noise from the IFSS discharge. FirstMerit did not test each hard drive in the Data Center to determine the level of damage to each hard drive. Based on the importance of the computer equipment to the banking functions of FirstMerit, it required a reliable and functional banking network as quickly as possible. FirstMerit would not use refurbished equipment due to the high failure rate of refurbished equipment. FirstMerit had planned on moving its Data Center to Flint, Michigan in two to three years. Based on the damage to the Data Center, FirstMerit fast-tracked the move to Flint. Using the FirstMerit IT department and an outside company named Advizex, FirstMerit established a new data center in Flint, Michigan.

{¶11} Based on the damage to the hard drives and computer equipment, FirstMerit filed a claim for loss with its liability insurance provider, Defendant-Appellee Westfield Insurance Group. Westfield consulted with Brad Davis, an engineer with Envista

that conducts investigations and evaluations of equipment damage. Brad Davis reviewed FirstMerit's claim of loss, analyzing the cost of replacing the damaged equipment with new equipment because FirstMerit would not use refurbished components. Brad Davis did not test each hard drive in the Data Center to determine if they were fatally damaged versus data corruption because of the quick time requirement and that it was certain a percentage of the hard drives were damaged. Based on Brad Davis's recommendation, Westfield paid FirstMerit for the claim of loss.

### Notice of a Claim

{¶12} On March 19, 2015, counsel for Plaintiff-Appellee Westfield Insurance Group notified Silco that a loss had occurred at FirstMerit for which Silco may be responsible. Westfield stated it was expected to make payment on the claim and would look to any responsible party for recovery of those monies.

{¶13} The March 19, 2015 notice of claim was signed for and received by Silco on March 23, 2015.

{¶14} West Bend Mutual Insurance, Silco's liability insurance provided, responded by voice mail to Westfield's notice of claim on March 31, 2015.

### Gary Crow's Statement

{¶15} On the day of the incident, Crow was the only Silco technician doing the inspection and test at the Data Center. On March 23, 2015, Crow completed a typed and signed statement on Silco letterhead regarding the March 16, 2015 incident. His statement read:

On 3/16/15 I had completed the Inergen system inspection and was sure

the control head was reset, panel was totally clear no alarms or troubles

and upon reinstalling the control head the system discharged. Larry from First Merit came to see what had happened and if I was ok, we then checked to see if power was lost to any portion of the protected hazard and found none was lost. IT dept. showed up about 15 mins. Later and stated the servers had gone down even though there was no power loss.

I then proceeded to remove the tanks with Geralds help and we installed there back up tanks and put the system back into service. We brought the empty cylinders back to the shop to ship to Ansul for recharge.

**The Lawsuit**

{¶16} Westfield filed an insurance subrogation complaint against Silco on April 1, 2016, alleging breach of contract, breach of implied warranties, and negligence based on the March 16, 2015 incident. Westfield filed a Notice of Dismissal without prejudice on June 21, 2016.

{¶17} On October 21, 2016, Westfield refiled its complaint. Westfield alleged negligence, breach of contract, breach of implied warranties, and breach of settlement contract (which was dismissed). Westfield claimed it sustained and incurred damages to its real and personal property in an amount in excess of $500,000.

{¶18} Silco filed a timely response. The parties engaged in substantial discovery.

**Discovery – The Crow Statement**

{¶19} On February 14, 2017, Westfield propounded Interrogatories on Silco that requested information regarding any statements arising out of the March 16, 2015 incident. Silco responded to the Interrogatories and objected to Westfield's request for

information regarding statements, citing the attorney-client privilege and the work product doctrine because the statement was prepared in the anticipation of litigation.

{¶20} Westfield took the deposition of David Fraser, the President of Silco, on July 20, 2017. Fraser testified Crow gave a typed and signed statement regarding the IFSS discharge. Silco's counsel objected to all questions regarding Crow's statement, citing the attorney-client privilege and work product doctrine.

{¶21} Westfield attempted to schedule the deposition of Crow, but the parties learned that Crow was suffering from terminal cancer and was unable to participate in a deposition. On July 28, 2017, Westfield again requested production of Crow's statement via email, but Silco objected. Crow passed away on August 15, 2017.

{¶22} On August 16, 2017, Westfield filed a motion to compel Silco to produce Crow's statement. Silco filed a response, arguing the statement was protected by the attorney-client privilege and the work product doctrine because it was written in the anticipation of litigation.

{¶23} The trial court ordered Silco to produce Crow's statement for an in camera inspection. On November 6, 2017, the trial court issued its judgment entry finding Crow's statement was discoverable and granted Westfield's motion to compel. It found that Silco failed to meet its burden of establishing the attorney-client privilege applied to the document. Crow's statement was written shortly after the incident and before the suit was filed.

### Silco's Motion for Summary Judgment

{¶24} Silco filed a motion for summary judgment on December 15, 2017. In its motion, Silco argued there was no genuine issue of material fact that the terms of the

Inspection Agreement as to the Limitation of Liability clause barred Westfield's claims for damages. Silco further argued reasonable minds could only conclude that Silco did not owe Westfield a duty under the Inspection Agreement and Silco did not therefore breach its duties to Westfield.

{¶25} The trial court found there was a genuine issue of material fact for trial and denied Silco's motion for summary judgment.

### Motion in Limine

{¶26} On April 2, 2018, Silco filed a motion in limine to exclude the expert testimony of Westfield's liability expert, Bert Davis, and Westfield's damages expert, Brad Davis. Silco also filed a motion in limine to exclude Crow's written statement or any testimony at trial regarding Crow's statements.

{¶27} At trial, the trial court overruled Silco's motions in limine. The trial court ruled that Silco was not required to object each time Westfield referenced Crow's statement or its experts. The trial court noted Silco's ongoing objection.

### Damages

{¶28} At trial, Westfield proceeded only with its breach of contract claim, together with the related breach of implied warranties good and workmanlike performance. The parties agreed they entered into a contract for testing, inspection, and maintenance of the IFSS. Westfield's expert, Brad Davis, testified as to the replacement cost value of the computer equipment. Westfield requested the jury award $800,000 in damages. Eric Dempsey, Silco's expert, testified the replacement cost value of the computer equipment was $294,658.82, but Silco argued Westfield's damages were limited to $60,000.

{¶29} Silco objected to the trial court's instruction to the jury as to the measure of damages. Silco maintained the correct measure of damages for personal property was fair market value, which is the value of the property immediately before the incident versus the value of the property immediately after. Silco further argued that because it was a subrogation claim, the measure of damages is not the amount the insurer pays to the insured. The proper measure of damages were the damages only as to FirstMerit. The trial court overruled Silco's objections, finding that because of the unique nature of the banking industry and the time frame involved, the proper measure of damages was the replacement cost value. The jury instructions stated:

> When one party materially breaches the express terms of the contract, the other party is entitled to damages in an amount sufficient to put it back in the same position that it would have been in if the contract had been fully performed by the breaching party. The other party is entitled to damages to the extent that the damages are reasonably certain and reasonably foreseeable.
>
> The other party should make reasonable efforts under the facts and circumstances in evidence to lessen damages caused by the breach of contract, often referred to as mitigating damages, but the other party is not required to take measures that would involve undue risk, burden, or humiliation.
>
> * * *
>
> If you find for the Plaintiff, the measure of damages is a reasonable value of the property to FirstMerit.

If property for personal use is destroyed, the measure of damages is the reasonable value to the owner. This does not necessarily mean the market value if sold as used property, but would have a higher reasonable value to the owner. At arriving at an amount, you may consider the original cost; the cost to replace such property less reasonable depreciation for its condition and use; the uses which the Plaintiff has for the property; and other facts in evidence. But the test you will apply is the reasonable value of the article to the owner at the time.

### Jury Verdict and Post-Trial Motions

{¶30} On May 10, 2018, the jury found by a greater weight of the evidence that Westfield demonstrated Silco failed to honor implied warranties and breached its obligations under the contact between FirstMerit and Silco, proximately causing Westfield's damages when Crow caused the IFSS to discharge. The jury found Silco proximately caused $295,000 in damages.

{¶31} On June 4, 2018, Silco filed a motion for new trial and alternative motion for judgment notwithstanding the verdict and remittitur. The trial court denied the motion on July 25, 2018.

{¶32} Silco filed a notice of appeal on August 14, 2018.

### ASSIGNMENTS OF ERROR

{¶33} Silco raises seven Assignments of Error:

{¶34} "I. THE TRIAL COURT ERRED IN DENYING SILCO'S MOTION IN LIMINE TO EXCLUDE THE WRITTEN STATEMENT OF GARY CROW (AND ANY ALLEGED EVIDENCE AND/OR TESTIMONY DERIVING THEREFROM OR RELATED THERETO)

AND SILCO'S MOTION FOR DIRECTED VERDICT, MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, OR ALTERNATIVE MOTION FOR NEW TRIAL REGARDING SAME.

{¶35} "II. THE TRIAL COURT ERRED BY DENYING SILCO'S MOTION FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT/ALTERNATIVE MOTION FOR NEW TRIAL RELATED TO THE MEASURE OF DAMAGES

{¶36} "III. THE TRIAL COURT ERRED BY ERRONEOUSLY GIVING IMPROPER JURY INSTRUCTIONS TO THE JURY ON THE IMPROPER MEASURE OF DAMAGES.

{¶37} "IV. THE TRIAL COURT ERRED BY ALLOWING EVIDENCE OF SPECULATIVE DAMAGES AND ALLOWING THE JURY TO AWARD DAMAGES BASED UPON THOSE SPECULATIVE DAMAGES.

{¶38} "V. THE TRIAL COURT ERRED BY DENYING SILCO'S DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR ALTERNATIVE MOTION FOR NEW TRIAL DUE TO SPECULATIVE DAMAGES AWARD.

{¶39} "VI. THE TRIAL COURT ERRED IN DENYING SILCO'S MOTION FOR SUMMARY JUDGMENT.

{¶40} "VII. THE TRIAL COURT ERRED IN DENYING SILCO'S MOTION IN LIMINE TO EXCLUDE WESTFIELD'S DAMAGES EXPERT."

**ANALYSIS**

**I. CROW'S STATEMENT**

{¶41} Silco argues in its first Assignment of Error that the trial court erred in finding Crow's statement was not privileged pursuant to the attorney-client privilege or work product doctrine and the statement was not hearsay, thereby denying Silco's motion in limine and motion for directed verdict, new trial, and judgment notwithstanding the verdict. We disagree.

{¶42} Silco filed a motion in limine requesting the trial court exclude Westfield from presenting any evidence or reference to any statements, written or oral, from the Crow. Silco contended Crow's statement solely dealt with and related to an internal investigative report prepared by Crow in anticipation of litigation. Crow allegedly prepared his statement at the direction of Silco's insurer and attorneys. Silco argued the statement was therefore protected by the attorney-client privilege and work product doctrine. Silco further objected to the use of the statement because it was barred as inadmissible hearsay, which prejudicial effect on Silco outweighed the probative value.

{¶43} When Westfield filed a motion to compel Crow's statement, the trial court granted the motion because it found Silco failed to meet its burden to demonstrate the statement was subject to the attorney-client privilege or that it was made in the anticipation of litigation. When denying the motion in limine, the trial court expounded further on its ruling, finding that under the very specific circumstances of this case, the person who made the statement unfortunately suffered an illness that took his life. He was not available for deposition or interrogatories. The trial court was troubled that the one person who made a statement as to what occurred was not available to be questioned

and his statement was being held back as privileged. In the interests of fairness, the trial court exercised his discretion and found Crow's statement was admissible at trial.

{¶44} "A motion in limine is a motion directed to the inherent discretion of the trial court judge to prevent the injection of prejudicial, irrelevant, inadmissible matters into trial." *State v. Strait*, 5th Dist. Delaware No. 14 CAA 12 0081, 2015-Ohio-4264, 2015 WL 5968655, ¶ 24 quoting *Mason v. Swartz*, 76 Ohio App.3d 43, 55, 600 N.E.2d 1121 (6th Dist.1991). "Generally, the grant or denial of such a motion is not a ruling on the evidence." *Mason, supra* at 55. It is a preliminary interlocutory order and the party's objection must be raised again at trial in order to permit the court to consider the admissibility of the evidence in its actual context. *Id.* The failure to object to the evidence at trial waives the right of the objecting party to raise the court's ruling on the preliminary motion as error on appeal. *Id.* In this case, after the trial court denied Silco's motion in limine, it noted Silco's ongoing objection to the use of Crow's statement so that Silco was not required to continually object during the trial. We find Silco did not waive the issue on appeal.

{¶45} The granting or denying a motion in limine are reviewed under an abuse of discretion standard of review. *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013–Ohio–1507. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

### Attorney-Client Privilege and Work Product Doctrine

{¶46} The main purpose behind the attorney-client privilege is to promote " 'full and frank communication between attorneys and their clients and thereby promote

broader public interests in the observance of law and the administration of justice.' " *Griffith v. Aultman Hosp.*, 5th Dist. Stark No. 2017CA0004, 2017-Ohio-8293, ¶ 44 citing *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 210, 744 N.E.2d 154, fn. 2, quoting *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584. On the other hand, "[t]he purpose of the work-product doctrine is 'to prevent an attorney from taking undue advantage of his adversary's industry or efforts.' " *Id.* quoting Civ.R. 26(A)(2). Although both the attorney-client privilege and the work-product doctrine might often apply to the same material, the protections do not overlap completely. *See, In re Election of Nov. 6, 1990 for the Office of Atty. Gen. of Ohio* (1991), 57 Ohio St.3d 614, 615, 567 N.E.2d 243.

{¶47} Privileges are to be strictly construed and "[t]he party claiming the privilege has the burden of proving that the privilege applies to the requested information." *Griffith*, supra at ¶ 46 quoting *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008–Ohio–4333, 896 N.E.2d 769, at ¶ 17. "The burden of showing that testimony [or documents] sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude [them] * * *." *Waldmann v. Waldmann* (1976), 48 Ohio St.2d 176, 178, 358 N.E.2d 521, citing *In re Martin* (1943), 141 Ohio St. 87, 103, 47 N.E.2d 388.

{¶48} In support of its argument that Crow's statement is privileged, Silco relies on the case of *In re Klenmann*, 132 Ohio St. 187, 5 N.E.2d 492 (1936), where the plaintiff was injured when his car was struck by an automobile driven by the defendant on behalf of his employer. The driver completed a casualty report, which he gave to his employer who forwarded the report to a local insurance agency, which then forwarded the original

report to the insurance company and a copy of the report to the insurance company's

attorney who was representing the employer. When the plaintiff sought production of the

casualty report, the defendants claimed the report was privileged and not discoverable.

The Supreme Court held:

> Where an insurer receives a report from its insured concerning a casualty
>
> covered by its policy of insurance, such report becomes property of the
>
> insurer and subject to its complete control; and, when the insurer transmits
>
> it to its counsel for the purpose of preparing a defense against a possible
>
> law suit growing out of such casualty, such report constitutes a
>
> communication from client to attorney and is privileged against production
>
> and disclosure * * *.

*Id.* at paragraph one of the syllabus. Silco claimed its insurer received a report and

communications from Silco, which the insurer passed on to its counsel. When the

communications were transmitted to counsel, they became privileged.

{¶49} Upon our review of the record, we find Silco failed to meet its burden that

Crow's statement was privileged either through the attorney-client communication or work

product doctrine. Silco did not present any evidence that would indicate Crow's statement

was prepared for or at the direction of Silco's insurer. There was no evidence Crow

prepared his statement at the direction of an attorney. The document was prepared

approximately seven days after the incident and one year before litigation ensued

between the parties. In *Witt v. Fairfield Pub. School Dist.*, 12th Dist. No. CA95-10-169,

1996 WL 189040 (Apr. 22, 1996), the court relied on *Klemann* to prevent the production

of witness statements taken by an insurance company. The Fourth District Court of

Appeals in *Breech v. Turner*, 127 Ohio App.3d 243, 712 N.E.2d 776 (4th Dist. 1998), cited to *Witt* and *Klemann* when it found the record established the defendant spoke with his insurer and his statement was provided to the insurer's counsel, and therefore such statement was privileged against production and disclosure. *Id*. at 250. In *Witt* and *Breech*, there was no evidentiary dispute the statements were prepared for the parties' insurer. In this case, however, Silco has not presented any evidence to support its contention Crow's statement was made for Silco's insurer or for its attorney. "A document of the client existing before it was communicated to the attorney is not within the present privilege so as to exempt it from production." *Klemann, supra* at 192; *See also, Perfection Corp. v. Travelers Cas. & Sur*., 153 Ohio App.3d 28, 2003-Ohio-2750, 790 N.E.2d 817, ¶ 17 (8th Dist.) (trial court properly ordered production of documents where the privilege log "fail[ed] to provide any evidence that any of the contested documents were either prepared by an attorney, at the direction of an attorney, or transmitted to an attorney.").

{¶50} We find the trial court did not abuse its discretion to deny Silco's motion in limine as to privilege.

**Hearsay**

{¶51} Silco next argues the trial court abused its discretion when it denied Silco's motion in limine as to hearsay and found Crow's statement admissible.

{¶52} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Huth v. Kus*, 5th Dist. No. 2017 AP 06 0015, 2018-Ohio-1931, 113 N.E.3d 140, 2018 WL 2230727, ¶ 30 quoting *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "Ordinarily, we review a trial court's hearsay

rulings for an abuse of discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). However, "[w]hether evidence is admissible because it falls within an exception to the hearsay rule is a question of law, thus, our review is de novo." *State v. Truitt*, 9th Dist. No. 25527, 2011-Ohio-6599, 2011 WL 6749811, ¶ 24 (quoting Monroe v. Steen, 9th Dist. No. 24342, 2009-Ohio-5163, 2009 WL 3119693, ¶ 11.

{¶53} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119, 509 N.E.2d 383 (1987).

{¶54} Silco argues Crow's statement is inadmissible hearsay pursuant to Evid.R. 804(B), which provides in relevant part:

(B) Hearsay Exceptions. The following are not excluded by the hearsay rule

if the declarant is unavailable as a witness:

* * *

(5) Statement by a Deceased or Incompetent Person. The statement was

made by a decedent or a mentally incompetent person, where all of the

following apply:

(a) the estate or personal representative of the decedent's estate or the

guardian or trustee of the incompetent person is a party;

(b) the statement was made before the death or the development of the

incompetency;

(c) the statement is offered to rebut testimony by an adverse party on a

matter within the knowledge of the decedent or incompetent person.

Silco contends because Crow's statement does not meet all of the Evid.R. 804(B)(5)

requirements, it does not meet the exceptions to the hearsay rule and was therefore not

admissible.

{¶55} Westfield argues Crow's statement was admissible pursuant to Evid.R. 801.

Evid. R 801 provides,

(D) Statements Which Are Not Hearsay. A statement is not hearsay if:

(2) Admission by Party–Opponent. The statement is offered against a party

and is (a) the party's own statement, in either an individual or a

representative capacity, or (b) a statement of which the party has

manifested an adoption or belief in its truth, or (c) a statement by a person

authorized by the party to make a statement concerning the subject, or (d)

a statement by the party's agent or servant concerning a matter within the

scope of the agency or employment, made during the existence of the

relationship, or (e) a statement by a co-conspirator of a party during the

course and in furtherance of the conspiracy upon independent proof of the

conspiracy.

{¶56} There is no disagreement between the parties that Gary Crow wrote the

statement, the statement was signed by Gary Crow, the statement was written on March

23, 2015 while Gary Crow was an employee of Silco, and the subject matter of the

statement was Gary Crow's recollections from the IFSS discharge on March 16, 2015. At

trial, Crow's statement was presented as an exhibit to the jury. The witnesses and experts testified as to Crow's written statement.

{¶57} In this matter, the trial court found Crow's statement admissible but did not specify the grounds for its admissibility. Upon our review, we find Crow's statement was non-hearsay as an admission under Evid.R. 801(D)(2)(d), therefore no error occurred in admitting the statement. Having established the Crow statement as non-hearsay, Silco's reliance upon the need for compliance with the hearsay exception in Evid.R. 804(B)(5), statement of a deceased person, is misplaced. Crow's intervening death does not change the applicability of Evid.R. 801(D)(2) or render his statement hearsay. *See Huth v. Kus*, 2018-Ohio-1931, 113 N.E.3d 140 (5th Dist.), ¶ 39.

{¶58} Silco's first Assignment of Error is overruled.

## II. AND III. MEASURE OF DAMAGES

{¶59} Silco contends in its second and third Assignments of Error that the trial court erred when it instructed that the jury the measure of damages was the "reasonable value to the owner." The trial court further erred, Silco argues, when it denied its motion for directed verdict, new trial, and judgment notwithstanding the verdict on this issue. We disagree.

{¶60} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Westfall v. Aultman Hosp.*, 5th Dist. No. 2015CA00223, 2017-Ohio-1250, 87 N.E.3d 735, ¶ 104 citing *Pettit v. Hughes*, 177 Ohio App.3d 344, 2008-Ohio-3780, 894 N.E.2d 738 (5th Dist.). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment.

*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988). Whether the jury instructions correctly state the law is a question of law, which we review de novo. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).

{¶61} The granting of a Civ.R. 59(A) motion for new trial is generally left to a trial court's sound discretion and the decision will not be reserved absent an abuse of that discretion. *State Farm Mut. Auto. Ins. Co. v. Williams*, 5th Dist. Licking No. 13-CA04, 2013-Ohio-3884, 2013 WL 4806467, at ¶ 22.

### Fair Market Value vs. Reasonable Value to Owner

{¶62} Silco contends the general rule is that the measure of damages to personal property is the difference between its market value immediately before and immediately after the injury. *Outer Space Signs, L.L.C. v. Clagg*, 4th Dist. Jackson No. 12CA11, 2013-Ohio-4350, 2013 WL 5476408, ¶ 7 citing *Falter v. City of Toledo*, 169 Ohio St. 238, 239–240, 158 N.E.2d 893 (1959). Where the personal property is totally destroyed, the measure of damages is the reasonable market value of the personal property immediately before its destruction. *Id.* citing *Ramey v. Collins*, 4th Dist. Scioto No. 99CA2665, 2000 WL 776932, *2 (June 5, 2000). " 'Fair market value' is '[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect.' " *Werr v. Moccabee*, 4th Dist. Ross No. 07CA2986, 2008–Ohio–595, ¶ 9, quoting Black's Law Dictionary (8th Ed.2004) 1587.

{¶63} Westfield proceeded to trial on its claim of breach of contract. "Ohio courts have held that the elements for a breach of contract are that a plaintiff must demonstrate by a preponderance of the evidence (1) that a contract existed, (2) that the plaintiff fulfilled

his obligations, (3) that the defendant failed to fulfill his obligations, and (4) that damages resulted from this failure." *Moore v. Adams*, 5th Dist. Tuscarawas No. No.2007AP090066, 2008–Ohio–5953, ¶ 22. " '[T]he general measure of damages in a contract action is the amount necessary to place the nonbreaching party in the position he or she would have been in had the breaching party fully performed under the contract.' " *Williams v. Williams*, 5th Dist. Morrow No. 2010-CA-0006, 2011-Ohio-1200, ¶ 21 quoting *Allied Erecting & Dismantling Co., Inc. v. Youngstown* (2002), 151 Ohio App.3d 16, 31–32, 783 N.E.2d 523, citing *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.* (1976), 47 Ohio St.2d 154, 159, 351 N.E.2d 121.

{¶64} " 'When market value cannot be feasibly obtained, a more elastic standard is resorted to, some-times called the standard of value to the owners.' " *Richmond v. Gerard*, 10th Dist. Franklin No. 95APE06-738, 1996 WL 125548 (Mar. 19, 1996), *2 citing *Cooper v. Feeney*, 34 Ohio App.3d 282, 283 (1986), citing *Bishop v. East Ohio Gas Co.*, 143 Ohio St. 541, 546, 56 N.E.2d 164 (1944). "The value to owner" is determined based on consideration on a number of factors, including the value to the owner, original cost, replacement cost, salvage value, if any, and fair market value at the time of loss. *Id*. Furthermore, "in determining this value, the court may consider the owner's opinion, which would be some evidence of the actual value though not conclusive." *Id*.

{¶65} In this case, we do not find the trial court erred in determining the measure of damages was the reasonable value of the property to FirstMerit. The personal property at issue was computer equipment, specifically hard drives, that contained the bank's active data and disaster recovery data. There was no evidentiary dispute that some of the hard drives were fatally damaged. There was also no evidentiary dispute the hard drives

operated as a network, not as stand-alone devices. Based on the sensitivity and value of the data contained on those hard drives and the nature of FirstMerit computer network, FirstMerit required the hard drives to be fully functional as quickly as possible. FirstMerit would not use refurbished computer equipment because the refurbished equipment was unreliable and based on the importance of its customers' banking data, FirstMerit required reliable equipment.

{¶66}  Under the unique circumstances of this case, we find no abuse of discretion for the trial court to instruct the jury as to the replacement cost value measure of damages rather than fair market value.

{¶67} Silco's second and third Assignments of Error are overruled.

## IV. AND V. SPECULATIVE DAMAGES

{¶68} Silco argues in its fourth and fifth Assignments of Error that the trial court erred by allowing evidence of speculative damages and not granting its motion for directed verdict, new trial, and judgment notwithstanding the verdict on that issue. It contended there was insufficient evidence to support the jury's award of damages. We disagree.

{¶69} Westfield argued it was required to replace 500 hard drives to return the Data Center to its full functionality. Silco contends Westfield failed to establish that all 500 hard drives were fatally damaged and required replacement. Westfield and Silco presented witness testimony and expert testimony as to the alleged damage to the hard drives. "In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice *or* a finding that the

award is manifestly excessive." (Emphasis sic*.) Price v. KNL Custom Homes, Inc.*, 9th Dist. No. 26968, 2015-Ohio-436, 28 N.E.3d 640, 2015 WL 501865, ¶ 46 quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 654, 635 N.E.2d 331 (1994). Further, a jury "may separate the testimony as they wish according to what is credible to them." *State v. Mastel*, 26 Ohio St.2d 170, 177, 270 N.E.2d 650 (1971). A jury is "free to believe all, part, or none of the testimony of each witness." *State v. Jackson*, 86 Ohio App.3d 29, 33, 619 N.E.2d 1135 (4th Dist.1993).

{¶70} Eric Dempsey, Silco's damages expert, testified the replacement cost value of the computer equipment was $294,658.82. The jury awarded Westfield $295,000.00. In this case, the jury found Silco's expert to be credible as to the amount of damages.

{¶71} Silco's third and fourth Assignments of Error are overruled.

## VI. LIMITATION OF LIABILITY

{¶72} Silco contends in its fifth Assignment of Error that the trial court erred when it denied its motion for summary judgment on the issue of liability.

{¶73} We review cases involving a grant of summary judgment using a de novo standard of review. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24. Summary judgment is appropriately granted when " '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Esber Beverage Co. v. Labatt USA Operating Co.*, 138 Ohio St.3d 71, 2013-Ohio-4544, 3 N.E.3d 1173, ¶ 9, citing *M.H. v. Cuyahoga*

*Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, internal citation omitted; Civ.R. 56(C).

{¶74} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 433, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 323, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist. 1999).

{¶75} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Wentling v. David Motor Coach Ltd.*, 5th Dist. Stark No. 2017CA00190, 2018-Ohio-1618, 111 N.E.3d 610, ¶ 23, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Downtown Enterprises Co. v. Mullet*, 5th Dist. Holmes No. 17CA016, 2018-Ohio-3228, ¶ 50, citing *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

{¶76} Silco provided FirstMerit with a "Fire Suppression System Inspection & Testing Report" (hereinafter "Report"), which Silco required FirstMerit to sign. Ryan Rosenacre, Lead Maintenance Engineer for FirstMerit, signed the Report. The Report detailed the work Silco performed and the status of the IFSS.

{¶77} At the bottom of the Report provided to FirstMerit, it included the following language:

**IMPORTANT CUSTOMER NOTICE**: At the request of Customer, Silco has performed inspection, testing, and maintenance services based on the requirements in the NFPA 2001, 12, 12A, 17 and 72 for the frequency checked on the first page of the report. Silco's inspection, testing, and maintenance work is based on the information provided to Silco by the Customer, such as as-built drawings. Silco recommends the Customer review the applicable NFPA codes (available for free at www.nfpa.org). The Customer is responsible for properly maintaining the system and ensuring all inspection, testing, and maintenance requirements are performed (e.g. monthly inspections, semi-annual inspections, etc.). The Customer is responsible for providing Silco access to the system components. If there are inaccessible spaces or if the Customer has any concerns about penetrations that may have been made to the enclosure, it is recommended that the Customer authorize Silco to conduct a room pressurization test. Any comments/recommendations contained in this report regarding system design issues do not mean the entire system was evaluated from a design perspective and other portions of the system are problem free. These

design comments/recommendations are an observation the technician felt compelled to inform you about, but are outside the scope of Silco's inspection, testing, and maintenance services. If the Customer makes changes to the hazard or the hazard's enclosure, it is recommended the Customer conduct a formal design evaluation. Formal system design evaluations are available by Silco upon request as additional services for an additional fee and are conducted by select individuals qualified to conduct these specialized evaluations.

**LIMITATION OF LIABILITY**: If Silco is found liable for any loss or damage arising from goods sold and/or work performed by Silco, then Silco's maximum liability shall be limited to Two Hundred Fifty Thousand Dollars ($250,000) and this liability shall be exclusive; upon request and with payment of an additional fee this maximum liability can be increased and the increased limit will be set forth in a letter provided by Silco. Silco shall not be liable for any claims for any improper and/or imperfect performance based on a failure of a system to function effectively due to causes beyond the control of Silco, such as wear and tear, tampering, changes to the protected area, failure of the owner to authorize modifications or repairs or conduct required or recommended inspections and faulty design/installation by others. Fire Suppression Systems create noise prior to and during a system discharge. Recent incidents have found certain hard drives may be sensitive to noise. Silco shall have no liability for any loss or damage as a result of noise.

Silco moved for summary judgment, arguing the limitation of liability language barred Westfield's claims. The trial court denied the motion, finding there were genuine issues of material fact for trial. Specifically, the trial court found Silco was impermissibly altering the terms of the oral service contract without consideration and without evidence that FirstMerit's maintenance personnel had apparent authority to bind FirstMerit to the limitation of liability clause.

{¶78} Upon our de novo review, we agree with the trial court's conclusion there were disputed genuine issues of material fact regarding the enforcement of the limitation of liability clause. The clause was provided in an "Inspection and Testing Report" that was provided after the service work was conducted and after the discharge and damages had occurred. There was a question of fact as to whether FirstMerit manifested an intent, via a signature by its maintenance staff, to release Silco from liability for its **own** breach and subject FirstMerit to a damages limitation after the catastrophic discharge. It should also be noted that Silco did not raise the issue of the limitation of liability clause at trial, therefore, these factual issues were not developed at trial or submitted to the jury.

{¶79} Silco's sixth Assignment of Error is overruled.

### VII. WESTFIELD'S DAMAGES EXPERT

{¶80} Silco argues in its final Assignment of Error that the trial court abused its discretion when it denied its motion in limine to exclude Westfield's damages expert, Brad Davis.

{¶81} The granting or denying a motion in limine are reviewed under an abuse of discretion standard of review. *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013–Ohio–1507. In order to find an abuse of discretion, we must determine the trial

court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶82} Silco contends Brad Davis testified he did not test all the FirstMerit hard drives to determine which ones were fatally damaged and required replacement; therefore, he should not have been permitted to give his opinion as to damages. As stated above, there was no dispute it was unknown whether all 500 hard drives were fatally damaged, but it was known that the hard drives suffered damage. The witnesses testified that based on the catastrophic event and FirstMerit's networking requirements, it was necessary to replace all the hard drives to maintain a reliable and functional network. We find no abuse of discretion for the trial court to deny the motion in limine and allow the testimony of Brad Davis. It was for the finder of fact to determine whether they believed his testimony.

{¶83} Silco's seventh Assignment of Error is overruled.

**CONCLUSION**

{¶84} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, Earle, J., concur.